**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vladimir CEDANO–ROJAS,**
**Defendant–Appellant.**

No. 91–2898.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1992.

Decided July 26, 1993.

Matthew R. Bettenhausen, Asst. U.S. Atty., Office of U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Haywood E. McDuffie (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Joseph R. Lopez (argued), Chicago, IL, for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and LAY, Senior Circuit Judge.[*]

CUDAHY, Circuit Judge.

Vladimir Cedano–Rojas (Cedano) was indicted on one count of conspiracy to distribute ten kilograms of cocaine and one count of possession with intent to distribute one kilogram of cocaine as a result of a "reverse-buy" undercover operation. After a jury trial, Cedano was acquitted on the conspiracy charge but convicted on the possession count. At the sentencing hearing, the court determined that nine kilos of cocaine under negotiation at the time of the arrest should be used in calculating Cedano's base offense level. In addition, he was chargeable with approximately 40 kilos involved in the same course of conduct—transactions between the defendant and the government's cooperating witness prior to the sting. When the defendant refused to accept responsibility for the entire amount of cocaine involved in the reverse-buy transaction, the court denied the defendant an acceptance of responsibility reduction. In this appeal, Cedano challenges the inclusion of the nine kilos under negotiation and the 40 kilos deemed part of the same course of conduct. Cedano also contends that the district court violated his Fifth Amendment right against self-incrimination by denying him an acceptance of responsibility reduction when he refused to accept responsibility for the uncharged conduct. We affirm.

## I.

Cedano's arrest and conviction were the result of a "reverse-buy" undercover operation instigated by cooperating witness, Angel Rios. Cedano had previously bought cocaine from Rios in late 1987 and early 1988. In February of 1988, however, Rios' supplier was arrested and Rios' attempts to secure a new supplier were frustrated by the loss of

[*] The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

two large cocaine shipments worth approximately $1,000,000. In trying to arrange a deal with a new source in 1990, Rios was arrested and agreed to cooperate with the FBI in ferreting out other dealers.

At the direction of the FBI, Rios contacted Cedano on April 13, 1990, informing him that he had obtained a new source and was expecting a 50 kilogram shipment of cocaine. After Rios quoted him the price per kilo, Cedano stated that he could "move" ten kilos in two days, but wanted to start with one kilo. Five days later, Rios and Cedano met at a restaurant, at which time Cedano told Rios that ten kilos "were under [his] control." The next day, Rios met Cedano and Cedano's brother in a parking lot where Rios gave them one kilo. Cedano instructed Rios to save the other nine kilos for him, stating "Don't give them away." Cedano and his brother were then arrested.

Cedano was charged with conspiracy to distribute ten kilos of cocaine and possession with intent to distribute one kilo of cocaine. At trial Rios testified about his prior transactions with Cedano, estimating that he delivered approximately 40 kilos to him from 1987 to early 1988. Rios then elaborated on the series of conversations between himself and Cedano ultimately culminating in Cedano's arrest. The jury convicted Cedano on the possession count but acquitted him on the conspiracy count.

At the sentencing hearing on July 31, 1991, the court determined that Cedano should be held responsible for between 15 and 50 kilos of cocaine. The court found that Cedano intended to buy the nine kilos of cocaine under negotiation at the time of his arrest. The court also concluded that the prior transactions between Rios and Cedano occurring approximately two years before the offense of conviction were part of the same course of conduct. Finding that these trans-

actions involved 40 kilos, and in any event more than 15 kilos, the court determined that the relevant amount of cocaine in determining Cedano's base offense level was between 15 and 50 kilos, resulting in an offense level of 34. Finally, the court denied the defendant an acceptance of responsibility reduction because he refused to accept responsibility for the nine kilos under negotiation as well as the 40 kilos determined to be part of the same course of conduct. Cedano was sentenced to 168 months imprisonment, and he appeals.

## II.

### A. *The Nine Kilos Under Negotiation*

■ Cedano first argues that the district court erroneously calculated his base offense level by including the nine kilograms over which Rios and Cedano were negotiating at the time of the arrest.[1] Cedano contends that only the one kilogram he possessed should be used in calculating his offense level because he did not have the intent or ability to complete the nine kilogram transaction. Any offhand statements he made regarding his ability to move cocaine, Cedano suggests, were simple "braggadocio."

■ Section 1B1.3 of the Guidelines directs courts to consider "relevant conduct" when calculating a defendant's base offense level. Subsection 1B1.3(a)(1) provides that "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, *that occurred during the commission of the offense of conviction*" should be considered in fixing a base offense level. Subsection 1B1.3(a)(2) likewise states that "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct

---

1. The district court initially was concerned about using these nine kilos given the acquittal on the charge of conspiracy to distribute ten kilos. After briefing on the issue, the court correctly held that it was not precluded from using the nine kilograms because the acquittal related only to the charge of conspiracy and not to whether the defendant possessed or intended to possess the nine kilos. And even if the jury were to have

acquitted Cedano of the possession of the nine kilos, we have previously held that the sentencing court may consider all relevant conduct and, in appropriate circumstances, even conduct for which the defendant has been charged and acquitted. *United States v. Banks*, 964 F.2d 687, 692 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992).

or common scheme or plan as the offense of conviction" should be considered by the sentencing court.[2] The quantity of drugs used for calculating the defendant's offense level is a question of fact, which we review for clear error. *United States v. Mahoney,* 972 F.2d 139, 141 (7th Cir.1992).

■■■ Application Note 1 of § 2D1.4 of the Sentencing Guidelines[3] provides that

[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.[4]

This note makes clear that Cedano's base offense level should reflect the nine kilograms over which Cedano and Rios were negotiating if Cedano intended to buy the cocaine and he was reasonably capable of completing the transaction. *See United States v. Ruiz,* 932 F.2d 1174, 1183–84 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). Of course, the government bears the burden of proving both of these elements by a preponderance of the evidence and the district court's findings will not be set aside unless clearly erroneous. *Id.*

■■■ There is sufficient evidence that Cedano intended to buy the additional nine kilos. When Rios told Cedano that he was holding the nine kilos for him, Cedano stated, "Save them, save them," and instructed Rios,

"Don't give them away." The evidence also indicates that Cedano could complete the transaction. During one of their conversations prior to the April 19 transaction, Cedano told Rios that he could "move" 10 kilos over a two day period. Although Cedano submits that this was mere "braggadocio," there is a sufficient basis to lend credibility to the statement. Rios testified that he previously sold 40 kilos to Cedano. Further, Cedano's ability to complete the transaction was enhanced by the fact that the cocaine, as in the other transactions to which Rios testified, was fronted to Cedano. Hence, Cedano was not required to pay for the nine kilos at the outset but could pay Rios when he had distributed the cocaine to his buyers. *See Mahoney,* 972 F.2d at 142 (noting that issue of ability to complete the transaction not applicable with respect to middlemen).

Cedano relies on *United States v. Foley,* 906 F.2d at 1264, and *United States v. Richardson,* 939 F.2d 135 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992), to argue that his statements were not sufficient to hold him accountable for the nine kilos. The evidence of the defendant's intent here, however, is much more persuasive than in the circumstances of those two cases. In *Foley,* the issue was whether the defendant was accountable for two ounces, rather than for one ounce, of cocaine. The only evidence of an intent to buy two ounces, however, was that, when asked whether there was a discount for buying two ounces of cocaine, the defendant simply informed the government agent that the price for two ounces would be the same as for one ounce. In *Richardson,* moreover, the defendant, who accepted money from the government agent pursuant to an alleged

**2.** Section 3D1.2(d) instructs that crimes which are based on "the quantity of a substance involved," such as drug offenses, are to be grouped together. *See United States v. Ebbole,* 917 F.2d 1495, 1496 (7th Cir.1990).

**3.** Currently found at Application Note 12 to § 2D1.1 (November 1, 1992).

**4.** Application Note 1 is also applicable when the defendant is the buyer, rather than the producer, of drugs. *United States v. Brown,* 946 F.2d 58, 60 n. 3 (8th Cir.1991); *United States v. Adames,*

901 F.2d 11, 12 (2d Cir.1990). Moreover, although § 2D1.4 nominally applies only to situations in which the defendant is convicted of conspiracy or attempt, Application Note 12 of § 2D1.1 directs the sentencing court to Application Note 1 of § 2D1.4 when "the offense involved negotiation to traffic in a controlled substance." *United States v. Foley,* 906 F.2d 1261, 1263–64 (8th Cir.1990). As noted, *supra* note 3, Application Note 1 of § 2D1.4 is now itself found in Application Note 12 of § 2D1.1 (November 1, 1992).

cocaine deal, was merely trying to defraud the would-be buyer and had no intention or ability of supplying the agent with cocaine. Thus, these cases are of little help to Cedano, and we conclude that the inclusion of the nine kilos was not clearly erroneous.

### B. The Prior Transactions as Part of the Same Course of Conduct

Cedano also contends that the district court erred in including in the calculation of his base offense level the amount of cocaine involved in the uncharged prior transactions between Rios and Cedano. Cedano argues that there is insufficient evidence to include the prior purchases from Rios because Rios' testimony about those transactions is uncorroborated by any physical evidence. Moreover, Cedano maintains that, even if those transactions were to be credited, there is insufficient evidence to show that the prior transactions are part of the same course of conduct as the offense of conviction.

■■ As to Cedano's first contention, the lack of physical corroboration to support Rios' testimony about the prior transactions is immaterial. The testimony of one witness, even one arguably biased against the defendant, is sufficient to support a finding of fact. *See United States v. Caicedo,* 937 F.2d 1227, 1236 (7th Cir.1991). "[S]o long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." *United States v. Lueddeke,* 908 F.2d 230, 234 (7th Cir.1990) (quoting *United States v. Miller,* 891 F.2d 1265, 1270 (7th Cir.1989)). The district court found Rios' testimony about the prior transactions credible and consistent with Cedano's tape-recorded statements indicating that there had been earlier transactions. The determination that such transactions had taken place is not clearly erroneous.

■ We also reject the defendant's second contention that the prior transactions were not part of the same course of conduct. Whether the transactions are part of the same course of conduct as the offense of conviction depends upon the similarity, regularity and temporal proximity of the incidents

in question. *United States v. Mullins,* 971 F.2d 1138, 1144 (4th Cir.1992); *United States v. Hahn,* 960 F.2d 903, 910 (9th Cir.1992). Although temporal proximity is a significant consideration in finding a course of conduct, a lapse of time between the prior conduct and the charged offense is not necessarily dispositive of the issue. *Mullins,* 971 F.2d at 1144. A respite is unlikely to be fatal in the finding of a course of conduct if the interruption was not the choice of the players. In such circumstances, the lapse does not indicate that the course was abandoned but only that, in spite of the efforts of the participants, the venture was inadvertently put on hold. In *United States v. Nunez,* 958 F.2d 196, 198 (7th Cir.), *cert. denied,* ⸺ U.S. ⸺, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992), for example, a two-year break from the time of the uncharged drug sales to the time of the offense of conviction was held not to upset a finding that the prior transactions were part of the same course of conduct, in part because the lapse resulted from the buyer's arrest and incarceration. *See also United States v. Santiago,* 906 F.2d 867, 873 (2d Cir.1990) (eight-month interruption due to arrest). Moreover, finding a course of conduct in the absence of regularity and temporal proximity may not be clearly erroneous when there is a "stronger showing" of similarity between the offense of conviction and the uncharged conduct. *Mullins,* 971 F.2d at 1144 (quoting *Hahn,* 960 F.2d at 910). In considering the similarity of the conduct in question, a court must look to the identity of the participants and their roles in the events at issue, as well as the nature, structure and location of the allegedly related transactions, to determine whether the transactions are sufficiently related for purposes of § 1B1.3(a)(2). *See Santiago,* 906 F.2d at 872; *Ebbole,* 917 F.2d at 1496 n. 3.

In the present case, the prior transactions to which Rios testified occurred between October, 1987, and May, 1988. The offense of conviction occurred on April 19, 1990—approximately two years later. To be sure, we must be cautious and exacting in permitting such relatively stale dealings to be included in the same course of conduct as the offense of conviction. Nonetheless, we are satisfied that the prior transactions here are sufficiently related to the offense of conviction for

inclusion. First, the two-year respite can be explained by the fact that Rios had lost his supplier and was having difficulty in obtaining cocaine. Moreover, the drug transactions were conducted in substantially similar fashion: each took place in Chicago and involved a relatively large amount of cocaine; the cocaine was fronted to Cedano by Rios and picked up by "mules," or carriers working on behalf of Cedano. Accordingly, the district court's finding that forty kilos were part of the same course of conduct in calculating Cedano's base offense level was not clearly erroneous.

### C. The Denial of the Acceptance of Responsibility Reduction

Finally, Cedano argues that he was improperly denied an acceptance of responsibility reduction because he did not accept responsibility for the uncharged conduct. He contends that he accepted responsibility for the conduct underlying the offense of conviction, i.e., possession with intent to distribute one kilogram of cocaine. But he argues that the court violated his Fifth Amendment right against self-incrimination by denying him the reduction because he refused to accept responsibility for the nine kilos under negotiation at the time of arrest.[5]

■ At the time of Cedano's sentencing, Application Note 1(c) of § 3E1.1(a) required a defendant, in order to receive a reduction, to accept responsibility for his criminal conduct, including "the offense *and related conduct.*" (Emphasis added). A number of circuits have held that requiring the defendant to accept responsibility for uncharged related conduct violates the defendant's right against self-incrimination. *See United States v. Piper*, 918 F.2d 839, 840–41 (9th Cir.1990); *United States v. Oliveras*, 905 F.2d 623, 628–29 (2d Cir.1990); *United States v. Perez–Franco*, 873 F.2d 455, 458–59 (1st Cir.1989). The majority rule, however, is that a defendant may be required to accept responsibility for related conduct beyond the scope of his

or her conviction in order to obtain the acceptance of responsibility reduction. *See United States v. Kinder*, 946 F.2d 362, 367 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992); *United States v. Ruth*, 946 F.2d 110, 113 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992); *United States v. Herrera*, 928 F.2d 769, 774–75 (6th Cir.1991); *United States v. Munio*, 909 F.2d 436, 439–40 (11th Cir.1990), *cert. denied,* 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *United States v. Gordon*, 895 F.2d 932, 936–37 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). Apparently, we have recently accepted the majority view. In *United States v. Cojab*, 978 F.2d 341, 343 (7th Cir.1992), a criminal defendant was denied an acceptance of responsibility reduction because he refused to provide financial information to the probation office for purposes of the Presentence Report. We held that this refusal was permissible because denial of the reduction was not a penalty for Fifth Amendment purposes, but simply a denied benefit.

■ *Cojab* may well end the inquiry. However, recent amendments to § 3E1.1, effective as of November 1, 1992, add a new twist to Cedano's claim.[6] As amended, Application Note 1(a) now provides in relevant part:

Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

Under the amended version, a defendant need only accept responsibility for the con-

---

5. Cedano also refused to accept responsibility for the 40 kilos stemming from the prior transactions with Rios. The court stated, however, that, even if Cedano were to accept responsibility for the 40 kilos, it would not award Cedano the reduction because of his failure to come clean on the nine kilos. Sent. Tr. at 10.

6. Although neither party referred to the amendments to § 3E1.1 in its brief, we questioned counsel during oral argument as to the significance of the amendments to the dispute, and subsequently ordered supplemental briefing on the issue.

duct underlying his offense of conviction and should not be required to affirmatively come clean on relevant conduct in order to obtain the reduction. *See United States v. White,* 993 F.2d 147, 150–51 (7th Cir.1993). The defendant's sentence is generally determined by the Guidelines in effect at the time of sentencing and thus amendments taking effect after the sentencing hearing generally are not applicable on direct review. 18 U.S.C. § 3553(a)(4); *United States v. Windham,* 991 F.2d 181, 183 (5th Cir.1993). However, amendments to the Guidelines and its commentary are applicable on direct appeal and may change prior guideline interpretations if the amendments in question were meant to clarify, as opposed to substantively change, the earlier version of the provision. *See United States v. Chong Won Tai,* 994 F.2d 1204 (7th Cir.1993) ("commentary amendment prevails over a previous decision to the contrary, as long as the amendment clarifies, but does not substantively change, the applicable guideline"); *United States v. Thompson,* 944 F.2d 1331, 1347 (7th Cir. 1991) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992). Thus, the issue is, given the amendments, whether the version of § 3E1.1 in effect at the time of sentencing is properly interpreted to require the defendant to accept responsibility for uncharged conduct. In *United States v. White,* 993 F.2d at 150–51, we characterized the amendment as a "clarification," but did not resolve the issue whether the new version applied retroactively on direct appeal. We concluded that, even under the amended

version of § 3E1.1, the defendant there would not have been entitled to the reduction because he falsely denied the relevant conduct. *See also United States v. Corbin,* 998 F.2d 1377, 1393 n. 27 (7th Cir.1993).

 For identical reasons, we again need not resolve the issue. As in *White,* Cedano vigorously denied accepting the nine kilos and taking part in the transactions to which Rios testified. He contested these issues at trial,[7] objected to the Presentence Report with respect to these matters and outright denied them in his sentencing memoranda to the court. Indeed, Cedano went so far as to attach affidavits to his sentencing memoranda in an attempt to show that Rios' testimony was incredible. Contesting the veracity of the alleged relevant conduct is no doubt permissible and often perfectly appropriate. However, if a defendant denies the conduct and the court determines it to be true, the defendant cannot then claim that he has accepted responsibility for his actions. Consequently, even if we were to give Cedano the benefit of the recent amendment, he would not be entitled to the acceptance of responsibility reduction.

## III.

For the foregoing reasons, the sentence imposed by the district court is

AFFIRMED.

---

7. Indeed, even if Cedano was required simply to accept responsibility for the conduct underlying his offense of conviction, the acceptance of responsibility reduction is generally not available when the defendant comes clean only after he is convicted at trial. Although neither the district court nor the government relied on it, Application Note 2 of § 3E1.1 provides

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to

trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*See United States v. Rivero,* 993 F.2d 620 (7th Cir.1993); *United States v. Guadagno,* 970 F.2d 214, 226 (7th Cir.1992); *United States v. Agrell,* 965 F.2d 222, 228 (7th Cir.1992). We are hard-pressed to discover why this is a "rare" case in which the defendant demonstrated his acceptance of responsibility prior to trial, given that Cedano went to trial to challenge his factual guilt.