UNITED STATES of America,
Plaintiff–Appellee,

v.

Leonel RUIZ, Defendant–Appellant.

No. 98–1698.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1998.
Decided May 17, 1999.

Thomas P. Schneider, Christopher E. Ware (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Gary Seeling (argued), Waukesha, WI, for Defendant–Appellant.

Before EASTERBROOK, RIPPLE, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Leonel Ruiz was convicted of conspiracy to possess cocaine with intent to distribute, and possession of cocaine with intent to distribute. He was sentenced to 235 months imprisonment on each count, to run concurrently. He argues on appeal that the district court abused its discretion in admitting the testimony of two witnesses under Fed.R.Evid. 404(b), and that the evidence was insufficient to support the conviction.[1] He also challenges his sentence, contending that the district court erroneously imposed a two-level increase for possession of a gun, and erred in attributing 29 kilograms of cocaine to him in determining relevant conduct.

I.

On November 3, 1994, sheriff deputies working with the DEA stopped a pickup truck south of Milwaukee and found 3 kilograms of cocaine in a Miller beer 12–pack box behind the passenger seat. They also found a bottle of Inositol—a common cutting agent for cocaine—under the seat. Leonel Ruiz was riding in the passenger seat at the time of the stop, and was arrested along with the driver.

In a statement to DEA agents, Ruiz declared that he had spent the prior night with a male friend in Niles or Chicago, but could not recall the friend's name or address. He stated that he drove directly from his friend's house to a ranch owned by Ramon Navarro. When asked why he was wearing a pager, he said "I don't know. Sometimes for work." He then admitted that he was unemployed when asked where he worked. Finally, he disclaimed any knowledge of the cocaine in the truck.

Unbeknownst to Ruiz, the police had maintained surveillance on him since he left his home that morning. Through ground and air surveillance, DEA agents observed Ruiz leave his residence in Waukegan with his girlfriend and drive alone in his car to Navarro's ranch. He parked the car near a small outbuilding, and later moved it to another location on the property. Ruiz and Navarro later drove from the ranch in the pickup truck that was stopped near Milwaukee.

A narcotics detection canine was brought to Ruiz' car which was still parked at the ranch, and the dog alerted to the left rear quarter panel of the car and an area in the backseat near the driver's side door. In the backseat area, a DEA agent found that the panel near the armrest had been removed, the screws were loose, and factory-installed insulation was removed, apparently creating a "trap compartment" often used by narcotics traffickers to transport narcotics. A search of the ranch revealed more cocaine and drug paraphernalia. Ruiz' residence in Waukegan was also searched, yielding a 9mm semi-automatic handgun with an obliterated serial number and a small quantity of cocaine.

At trial, a number of witnesses testified about Ruiz' drug trafficking. The testimony revealed that Ruiz would often meet people at hotels in Waukegan to conduct cocaine transactions. He was almost always armed when at the hotels. Ruiz also transported 2 to 4 kilograms of cocaine from Waukegan to Milwaukee each week. The government also presented testimony of prior narcotics transactions pursuant to

---

1. Ruiz also raised a claim of ineffective assistance of counsel, but he has withdrawn that challenge in order to preserve his right to develop it in a possible § 2255 motion.

Federal Rule of Evidence 404(b). Eduardo Salurso and Jesus Diaz testified that they purchased cocaine in kilo quantities from Ruiz on some occasions from 1989 to 1992.

## II.

■ We note at the outset that a number of Ruiz' challenges, including his attack on the sufficiency of the evidence, are based upon challenges to the credibility of the witnesses. Credibility determinations by the jury will be reversed on appeal only in exceptional circumstances, such as "where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Hach,* 162 F.3d 937, 942 n. 1 (7th Cir.1998). Ruiz has argued no such circumstances here. His challenge to the sufficiency of the evidence is therefore without merit. We are left, then, with only a few claims.

■ Ruiz challenges the admission under Rule 404(b) of evidence of other acts involving drugs, asserting that they bear no temporal relationship to the acts underlying the indictment. Rule 404(b) generally prohibits other crime evidence, but provides in relevant part that "[e]vidence of other crimes, wrongs, or acts . . . may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." The government presented the testimony of witnesses Eduardo Salurso and Jesus Diaz regarding drug activity that took place between 1989 and 1992 involving Ruiz. The testimony was offered to establish Ruiz' intent regarding the 1994 conspiracy, which is a proper purpose under Rule 404(b). The second part of the test, however, requires that the other acts

be similar enough and close enough in time to be relevant to the matter in issue. Ruiz asserts that the testimony should have been excluded as too remote in time, because the acts occurred two years before the charged conspiracy. The analysis of "how long is too long" is a flexible one, and the answer depends on the theory for which the evidence is offered. *United States v. Torres,* 977 F.2d 321, 326 (7th Cir.1992). In this case, the answer hinges on whether the two-year time period is proximate enough for those acts to be relevant to Ruiz' intent in committing the charged crime. *Id.* at 326–27.

■ Contrary to Ruiz' apparent assumption, two years is not an inherently unacceptable gap under Rule 404(b). In fact, this court has upheld the admission of testimony under Rule 404(b) that involved gaps in time dramatically longer than two years. *See, e.g., United States v. Kreiser,* 15 F.3d 635 (7th Cir.1994) (7–year gap in time); *United States v. Harrod,* 856 F.2d 996 (7th Cir.1988) (5–year gap in time).[2] In particular, if the acts are similar in nature to those of the charged crime, even a substantial gap in time may not destroy the relevance of the acts to the determination of the defendant's intent in committing the charged conduct. Ruiz does not argue that the 1989 to 1992 acts were dissimilar from the charged conduct, relying instead on a bare assertion that two years is too long. Our review indicates that Salurso and Diaz testified regarding drug activities that were in fact similar in nature to those for which Ruiz was charged. Although the persons involved in the 1989 through 1992 drug activities were not the same as those in the charged conspiracy, the acts bore a number of parallels with the charged conduct. Both the Rule 404(b) evidence and the charged conduct involved the supply of kilogram quan-

---

**2.** The government relied entirely on *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993), for its Rule 404(b) argument, stating that the acts which occurred 2–3 years prior to the charged crimes "falls within the time parameters generally accepted by this court." That reliance on *Cedano–Rojas* is misplaced. As we discuss later, *Cedano–Rojas* addressed the § 1B1.3 relevant conduct determination, and the focus for that temporal proximity analysis is distinctly different than that appropriate to a Rule 404(b) challenge.

tities of cocaine by Ruiz to dealers in Milwaukee from his base in the Waukegan area. The testimony indicated that, on some occasions, Ruiz drove to Milwaukee with the drugs. That transportation of kilogram quantities of drugs from the Waukegan area to Milwaukee by car is precisely the conduct for which Ruiz was charged in this case. Evidence that he engaged in such conduct two years prior to the charged conduct is relevant to his intent and knowledge of the presence of the drugs in the vehicle in this case. Moreover, the district court did not abuse its discretion in determining that the probative value outweighed the potential for unfair prejudice.

### III.

Finally, Ruiz raises two challenges to his sentence. First, he argues that the district court erred in assessing a two-level enhancement for possession of a firearm, because the use of a firearm is not unusual in drug cases and thus not an aggravating circumstance under U.S.S.G. § 5K2.0. Moreover, he claims that the witness who testified that he routinely carried a gun was not credible. The district court's credibility determination is not clearly erroneous. *See, e.g.,* 18 U.S.C. § 3742(e) ("the court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous"). Moreover, Ruiz received a two-level increase under U.S.S.G. § 2D1.1(b)(1), which applies because he possessed the gun during the offense. Section 5K2.0 was not applied, and thus his argument that guns are too common in drug transactions to be considered an aggravating circumstance under § 5K2.0 is frivolous.

Ruiz also challenges the district court's assessment of the drug quantity in sentencing. First, Ruiz challenges the six kilograms that the court calculated based upon the testimony of Salurso and Diaz.

Ruiz contends that those kilograms should not have been counted in determining relevant conduct under U.S.S.G. § 1B1.3, because the conduct lacked temporal proximity (and, again, because their testimony was not credible). Under U.S.S.G. § 1B1.3(a)(2), conduct is relevant for sentencing purposes if it is part of the same course of conduct or common scheme or plan as the offense of conviction. In determining whether conduct meets that standard, courts examine the "similarity, regularity and temporal proximity of the incidents in question" to the offense of conviction. *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993). While the terminology is similar to that used in Rule 404(b) evaluations, the focus is different. Under Rule 404(b), the question is whether the conduct is close enough in time and similar enough in nature to be relevant to a determination of intent, knowledge, etc. In contrast, the issue under § 1B1.3 is whether the conduct is close enough in time and character to constitute a single course of conduct or common scheme. As this case demonstrates, conduct which satisfies the Rule 404(b) test may nevertheless not constitute relevant conduct for sentencing purposes. *See United States v. Spence,* 125 F.3d 1192, 1195 n. 3 (8th Cir.1997) (noting that the standards for Rule 404(b) may be broader than those for relevant conduct).

The government maintains that the conduct is relevant under our decisions in *United States v. Nunez,* 958 F.2d 196 (7th Cir.1992), and *Cedano–Rojas,* 999 F.2d 1175. Those cases do not support a holding that the 1989 through 1992 quantities were relevant conduct. In fact, they counsel an opposite conclusion. *Cedano–Rojas* discussed the issue of temporal proximity in the sentencing context, in determining whether prior drug transactions were part of the same course of conduct. In *Cedano–Rojas,* the defendant was convicted of possession with intent to distribute cocaine. *Id.* at 1177. At sentencing, the district court included 40 kilos of co-

caine as relevant conduct based upon cocaine transactions that occurred two years prior to the offense of conviction. *Id.* at 1177–78. In upholding the sentence, this Court did not hold that a two-year gap in time was always acceptable; rather, it said such a gap in time might not be fatal if the interruption was not the choice of the players. *Id.* at 1180. As the *Cedano–Rojas* court recognized, an involuntary cessation of activity for a period of time may not connote abandonment of the course of conduct, but instead may indicate that despite the participants' efforts the scheme was put on hold temporarily. *Id.* at 1180. Thus, where the gap in time is explainable by non-volitional factors, such as by incarceration of the defendant in the interim or by evidence demonstrating that the defendant lost his supplier and had trouble finding a new one during that time, it may not preclude a finding of a single course of conduct for sentencing purposes. A court faced with a significant gap must consider a range of factors to determine whether the gap represents the cessation of one scheme and the beginning of another, or whether it is a continuation of the same scheme or course of conduct. In addition to the aforementioned considerations, the regularity and similarity of the crime is relevant to that analysis. If the prior incidents are remote in time, a stronger showing of regularity and similarity may be necessary to support a determination of a single course of conduct. Where the gap in time is as long as the two years in this case, "we must be cautious and exacting in permitting such relatively stale dealings to be included in the same course of conduct as the offense of conviction." *Cedano–Rojas,* 999 F.2d at 1180.

In the present case, the two-year gap in time is not fully explained by non-volitional circumstances. For part of 1992, Ruiz was apparently incarcerated, and therefore that time period would not in itself signify a cessation of the course of conduct. The remaining years of non-activity, however, are not similarly reconciled. There is no explanation for the lack of drug activity from 1992 to 1994 which would attribute that gap to something other than an end of that course of conduct. Moreover, the crime alleged in the case was one that involved frequent cocaine deals. Testimony at trial indicated that the 1994 conspiracy involved weekly cocaine deliveries to Milwaukee. Given that regularity, the two-year period of inactivity is even more problematic. Finally, although the offense alleged is similar in kind to the earlier transactions, the participants in the offense of conviction are different from those in the 1989 to 1992 transactions with the exception of Ruiz himself. *Compare Cedano–Rojas,* 999 F.2d at 1181 (transactions involved the same. persons, similar amounts of cocaine, same location and similar method of delivery). Those factors, in combination with the lengthy unexplained gap in time, negate a finding that the earlier transactions were part of the same course of conduct or scheme. As we cautioned in *United States v. Sykes,* 7 F.3d 1331, 1336 (7th Cir.1993), "a court must consider whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." Given the remoteness in time, the frequency of transactions during the charged conspiracy, and the absence of continuity among participants, we are left with prior acts' that are similar in kind but cannot be said to be part of the same course of conduct. We hold, therefore, that the district court clearly erred in considering the 6 kilograms of cocaine from the 1989 through 1992 transactions as relevant conduct for sentencing.

That conclusion does not, however, require a remand for resentencing. The court found Ruiz was responsible for 29 kilograms of cocaine, placing him in the 15 to 50 kilogram range of the Guidelines. Even disregarding the 6 kilograms wrongly included, Ruiz still falls within that range. His challenge to the remaining

kilograms is based entirely on attacking the credibility of the witnesses against him. As we have earlier noted, however, his credibility attacks are without merit. Therefore, the court properly placed Ruiz in the 15 to 50 kilogram range. The conviction and sentence are AFFIRMED.