# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2016

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-CR-20004—**Michael P. McCuskey**, *Judge.*

ARGUED DECEMBER 13, 2002—DECIDED APRIL 1, 2003

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* In this appeal, we review the sentence imposed on John Johnson as the result of his plea of guilty to distributing more than five grams of crack cocaine. Johnson does not believe that half of his federal sentence should have been imposed consecutively to his sentence on an earlier state-law drug charge. He argues that the state-law drug offense should be considered part and parcel with the federal drug offense, and that, under the federal sentencing guidelines, the sentences for the two offenses should therefore run concurrently. The district court did not agree and sentenced Johnson to serve 35 months of his federal sentence consecutive to his state sentence. We conclude that the dis-

trict court did not err in holding that the state drug offense was not relevant to the federal offense, but rather was properly considered as a wholly separate conviction. We therefore affirm the sentence imposed by the district court.

## I. HISTORY

Johnson's appeal ultimately involves a characterization of the relationship between two drug convictions. The first arose out of a 1999 drug trafficking investigation by state law enforcement officials in Decatur, Illinois. When state agents learned that Jeff Bullock was traveling from Decatur to Chicago to obtain marijuana and cocaine to be sold in the Decatur area, they began surveillance on Bullock. Sometime thereafter, the agents observed Bullock meeting briefly with Johnson. On July 29, 1999, the agents stopped Bullock, Richard Wilson, and another colleague (Johnson was not with them at the time) on their way back to Decatur from Chicago and found they were transporting two kilograms of powder cocaine and some 100 pounds of marijuana.

About a week later, pursuant to a state warrant, state agents seized an automobile belonging to Wilson. At the time the automobile was seized, Johnson was its sole occupant, sitting in the driver's seat. A search of the car yielded approximately 3.5 grams of crack cocaine and over $2,500 in cash. Johnson admitted the crack cocaine was for his personal use, and he was subsequently charged by the authorities for possession of the drug and released on bond. In October 1999, Johnson's apartment in Mt. Zion, Illinois, was searched pursuant to another state warrant, where officers found, among other items, trace amounts of crack cocaine in a microwave oven, a digital scale, two empty plastic wrappers that appeared to be kilogram-sized wrappers previously containing powder cocaine, and several thousand dollars in cash.

As a result of the state investigation, on October 5, 1999, Johnson, Bullock, and Wilson were arrested and charged by state authorities with various state-law drug offenses. The four counts with which Johnson was charged were based on Johnson conspiring with Bullock and Wilson to possess and distribute powder cocaine from October 1, 1997, through August 26, 1999, as well as Johnson's possession of the crack cocaine found during the seizure of Wilson's vehicle. On June 7, 2001, Johnson pleaded guilty to one count of conspiracy and, pursuant to his plea agreement with state prosecutors, was sentenced to 20 years imprisonment in the Illinois Department of Corrections.

The second conviction, and the offense at issue in this appeal, is a federal charge of distributing cocaine base, or crack cocaine. In October 2000, over a year after Johnson had been charged under state law with the drug conspiracy relating to powder cocaine, he sold approximately one ounce of crack cocaine to a confidential source working with federal authorities. Johnson was indicted by a federal grand jury on one count of distribution of over five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Johnson pleaded guilty to this count without benefit of a written plea agreement.

The dispute at issue in this appeal arose during the subsequent sentencing of Johnson on this federal charge. The presentence report ("PSR") prepared for the case determined, and the sentencing court agreed, that Johnson's prior state conviction for drug conspiracy was not relevant conduct with respect to the federal drug charge. Instead, both the PSR and the court concluded that the state conviction was to be treated as a separate, prior sentence for purposes of his federal sentencing. This determination gave the court the discretion, as discussed more fully below, to impose the federal sentence either concurrently or consecutively to the state sentence. The

court imposed half of the sentence—35 months of the total sentence of 70 months imprisonment—to run consecutively to the state sentence. It is this relevancy determination that Johnson now asks us to reconsider.

## II. ANALYSIS

We review the sentencing court's legal interpretation of the federal sentencing guidelines *de novo*, while the application of the guidelines to particular circumstances is reviewed for clear error. *United States v. Gibson*, 155 F.3d 844, 846 (7th Cir. 1998). In addition, we review the factual findings of the district court for clear error. *United States v. Williams*, 272 F.3d 845, 852 (7th Cir. 2001). The district court's calculation of the quantity of drugs attributable to the defendant as relevant conduct, as a factual determination, is reviewed under the clearly erroneous standard. *United States v. Partee*, 301 F.3d 576, 578-79 (7th Cir. 2002).

We begin with a brief review of how the district court came to impose the sentence it did. The PSR prepared in this case concluded that, under the federal sentencing guidelines, Johnson should be sentenced according to a base offense level of 25 and a criminal history category of III, meaning a sentence range of 70 to 87 months imprisonment. The base offense level was calculated by reference to guideline § 2D1.1, which pegs the offense level to the amount of drugs involved in the offense; that guideline provides for a level of 28 for offenses involving between 20 and 35 grams of cocaine base. *See* U.S.S.G. § 2D1.1(6) (2002). Johnson was given a downward adjustment of three levels for demonstrating acceptance of responsibility by timely pleading guilty, resulting in the ultimate base offense level of 25. *See* U.S.S.G. § 3E1.1(a), (b)(1), & (b)(2).

In calculating the criminal history category, the PSR included as a "prior sentence" Johnson's June 2001 conviction on the Illinois state-law drug-conspiracy charge; this conviction added three points to his criminal-history score, leading to a total score of five. *See* U.S.S.G. § 4A1.1(a). Had the PSR instead concluded that the state drug conviction was conduct relevant to the federal charge, that state conviction would not have been included in the criminal-history calculation, resulting in a score of two rather than five. *See* U.S.S.G. § 4A1.2(a)(1) (defining "prior sentence" as "any sentence previously imposed . . . *for conduct not part of the instant offense*" (emphasis added)); *see also* U.S.S.G. § 4A1.2 cmt. n.1 (noting that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)"). If, however, the state drug offense had been found relevant to the federal offense (i.e., as part of one overall scheme or plan), the quantity of drugs involved in the state offense would then be considered in setting the base offense level, leading to a increased base offense level of 27 rather than 25 in Johnson's case. *See United States v. Zehm*, 217 F.3d 506, 511 (7th Cir. 2000) (citing *United States v. Griffin*, 194 F.3d 808, 826 (7th Cir. 1999)) ("The Sentencing Guidelines instruct that a defendant's base offense level reflect the quantity of drugs for which the defendant is accountable."); *see also* U.S.S.G. § 3D1.2(d); U.S.S.G. § 2D1.1(5). Had the PSR characterized the state offense as relevant conduct rather than as a prior sentence, the corresponding sentence range Johnson faced would have increased to 78 to 97 months imprisonment.

Johnson was willing to accept the increased sentence range, however, because it would have meant that the sentencing court was precluded from imposing his federal sentence to run consecutively to the state sentence, resulting in an overall shorter term of imprisonment. *See*

U.S.S.G. § 5G1.3(b). Under § 5G1.3(b), if offense conduct underlying an earlier, undischarged term of imprisonment is "fully taken into account" when fashioning the subsequent sentence, the guidelines quite sensibly provide that the sentence for the instant offense should be served at the same time as the sentence for the earlier offense. *Id.* In that situation, the district court is required to impose the second sentence concurrently. *See id.* ("[T]he sentence for the instant offense *shall* be imposed to run concurrently to the undischarged term of imprisonment." (emphasis added)). If, however, the uncharged offense conduct is not "fully taken into account" when formulating the second sentence, the sentencing court has the discretion to impose a sentence "to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c).[1]

The sentencing court here found that Johnson's earlier state-law drug conviction had not been "fully taken into account"—that it was not considered by the court to be part of the same course of conduct or overall plan—when Johnson was sentenced on the federal drug conviction. As

---

[1] Guideline § 5G1.3—by providing that an appropriate total sentence is imposed for all relevant conduct, no matter how that conduct is ultimately divided and charged—is meant to ensure that a defendant is not punished excessively for one particular episode of offense conduct. As we have noted, "[b]y counterfactually anchoring sentences around the punishment a defendant would have received had the sentences been imposed simultaneously, this approach attempts to prevent the Government from taking advantage of multiple prosecutions to get longer total punishments." *United States v. Johnson*, 117 F.3d 1010, 1013 (7th Cir. 1997) (citing *Witte v. United States*, 515 U.S. 389 (1995), and *United States v. Lechuga*, 975 F.2d 397, 400 (7th Cir. 1992)).

a result, the court exercised its discretion under § 5G1.3(c) to impose half of Johnson's federal sentence—35 months of a total of 70 months imprisonment—to be served consecutively to the state sentence. The issue raised by Johnson on appeal is whether the sentencing court should have concluded that Johnson's prior state-law drug conviction was relevant conduct for purposes of sentencing him on the federal charge, meaning that the state offense had been "fully taken into account" in formulating the federal sentence and triggering § 5G1.3(b)'s concurrent sentencing provision.

Section 1B1.3(a)(2) is the primary guideline provision governing what a sentencing court may consider as relevant. It defines "relevant conduct" as those acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The commentary to this guideline provision explains that uncharged drug offenses are within "a common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n.9. Further, offenses may be within the "same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.*

When determining whether uncharged conduct is part of the same course of conduct, a court should assess whether there is "a strong relationship" between the uncharged conduct and the offense of conviction, looking to whether there is "significant similarity, regularity, and temporal proximity." *United States v. Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998) (quotations omitted). A court must consider "the identity of the participants and their roles in the events at issue, as well as the nature, structure and location of the allegedly related transactions." *United*

*States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993). But we also have warned that the relevant conduct guideline "must not be read to encompass any offense that is similar in kind to the offense of conviction, but that does not bear the required relationship to that offense." *Bacallao*, 149 F.3d at 719-20 (quotations omitted); *see also United States v. Crockett*, 82 F.3d 722, 729 (7th Cir. 1996) (noting that the relevant conduct guideline "should not be applied to offenses that are of the same kind, but not encompassed in the same course of conduct or plan as the convicted offenses" (quotations omitted)).

We agree with the district court that there are sufficient differences between Johnson's state-law drug conviction and the federal offense at issue here to preclude the state offense conduct from being considered relevant to the federal offense. The sentencing judge engaged in a thorough review of the two offenses and, during the sentencing hearing, outlined his reasons for reaching the conclusion that the state-law conspiracy and the federal charge were not related. (*See* Sent. Tr. at 128-32.) There is no clear error in the conclusion that no "strong relationship" between the 1999 drug conspiracy and the 2000 drug sale existed, as the two events do not share "a significant similarity, regularity, and temporal proximity." *Bacallao*, 149 F.3d at 719.

First, the court found that the two criminal episodes lacked temporal proximity. (Sent. Tr. at 131-32.) The state-law drug-conspiracy activities took place in mid- to late-1999, while Johnson's sale of crack cocaine to a confidential source at issue in the federal offense occurred in October 2000—a span of more than one year between the offenses. While lapse of time between the two offenses is not in itself dispositive of the question of relevance, *see Cedano-Rojas*, 999 F.2d at 1180, it does suggest the separate character of the two episodes.

Second, the nature of the two offenses is different: the sentencing judge observed that the state-law drug conspiracy involved powder cocaine, while the federal charge involved an ounce of crack cocaine. (Sent. Tr. at 132.) As we noted above, it is not enough that the two offenses both involve drug transactions. *See Crockett*, 82 F.3d at 730. Rather, there must be more commonality to create a substantial connection between the two offenses. In this case, the fact that the two drug transactions involved different types of drugs undercuts even this superficial similarity.

Third, the sentencing court noted that the two offenses were conducted through differing *modus operandi*. (Sent. Tr. at 131-32.) The state-law drug conspiracy involved Johnson's participation, in cooperation with his coconspirators, in a scheme to distribute large amounts of the drug to numerous individuals, while the federal offense involved Johnson apparently acting alone to make an individual drug sale. This consideration raises additional differences: the court below noted that the two offenses involved different victims (Sent. Tr. at 131), different participants (Sent. Tr. at 131-32), and different roles for those participants (Sent Tr. at 131-32). The state conspiracy involved cocaine distributed in cooperation with coconspirators Bullock and Wilson to various unnamed customers, while the federal offense apparently involved Johnson acting individually (Bullock was incarcerated at the time of the sale) to distribute crack cocaine to a confidential source. The conduct underlying the state conviction involved Johnson acting under Bullock's direction, while the federal offense involved Johnson's direct contact with a source of drugs in Chicago (after Bullock was incarcerated, he did put Johnson in contact with "Tony," Bullock's cocaine source in Chicago, but Johnson apparently used "Tony" as just one of many sources). Thus, Johnson's role after the incarceration of Bullock changed from one of many coconspirators to lone dealer.

As we have noted, "[t]he mere fact that the defendant has engaged in other drug transactions is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes." *Crockett*, 82 F.3d at 730. Based on its reasoned analysis of the two incidents, the sentencing court determined that Johnson's state drug conviction was not part of the same course of conduct or common scheme or plan as the federal offense, and thus was not "fully taken into account in the determination of the offense level for the instant [federal] offense." U.S.S.G. § 5G1.3(b). There is nothing to suggest this determination was erroneous. Thus, the district court did not clearly err in ordering half of Johnson's term of imprisonment to run consecutively to his state sentence.

## III.  CONCLUSION

The district court's application of the sentencing guidelines to the particular circumstances of Johnson's case was not clearly erroneous. The sentence imposed below is AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*