**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 22, 2007
Decided February 28, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4184

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 04-CR-267-1 |
| ALONZO GADSON, *Defendant-Appellant*. | Rebecca R. Pallmeyer, *Judge.* |

**O R D E R**

Alonzo Gadson entered a guilty plea, without a formal written plea agreement, to a charge of distributing more than five grams of crack cocaine.  *See* 21 U.S.C. § 841(a)(1).  At his plea colloquy, Gadson admitted that on April 11, 2003, he spoke on the telephone to a confidential informant ("CI") and arranged to sell him an ounce of crack in a grocery store parking lot in Joliet, Illinois.  About fifteen minutes later, Gadson and the CI met in the parking lot; Gadson retrieved 26.1 grams of crack from the gas tank of his car and gave it to the CI in exchange for $750.

Following the plea colloquy, a probation officer prepared a presentence report ("PSR") using the 2004 version of the guidelines. In calculating Gadson's offense level, the probation officer attributed 52.4 grams of crack to Gadson—the 26.1 grams which formed the basis of his conviction, and an additional 26.3 grams discovered, four months earlier, following a December 2002 traffic stop in Joliet. The probation officer determined that the December 2002 crack offense was part of the same course of conduct as the underlying offense because it was similar in nature and occurred just four months after the sale to the informant. *See* U.S.S.G. § 1B1.3(a)(2). The probation officer recommended a base offense level of 32 for 50 to 150 grams of crack cocaine. *See* U.S.S.G. § 2D1.1(c)(4). Coupled with his criminal history category of III, a guidelines range of 151 to 188 months was proposed.

Gadson objected to the drug calculation in the PSR, arguing that the uncharged 26.3 grams of crack discovered after his December 2002 traffic stop was not part of the same course of conduct as the sale of 26.1 grams of crack to the CI that formed the basis of his conviction. In distinguishing the December 2002 event, Gadson argued that it took place four months prior to the underlying offense, occurred in a different part of Joliet, did not involve the CI, and involved crack that was stashed on his person, not in his vehicle. The government countered that the crack discovered in December 2002 was part of the same course of conduct because it was close in time to the April 2003 sale to the CI, both offenses occurred in Joliet, both involved crack, and both involved almost the exact same quantity. The government further pointed out that this was part of an ongoing pattern of dealing because the CI testified before the grand jury that he "started buying crack cocaine and weed from [Gadson] in approximately 2000," and had purchased quarter-ounces of crack from Gadson more than twenty times.

At sentencing the district court sided with the government, concluding that the 26.3 grams of crack was relevant conduct to the underlying offense because it involved "the same general location, the same general mode of transporting, the same drug, the same quantity, the same approximate—the fact that both quantities are distribution quantities and similar or close in time." After reducing Gadson's offense level by three points for acceptance of responsibility, the district court calculated a guidelines range of 108 to 135 months and sentenced Gadson to 108 months. Gadson appeals, arguing that the 26.3 grams of crack was not "relevant conduct" and should not have been considered in formulating his guideline range.

We review a sentencing court's drug quantity calculation for clear error. *See United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005). Under § 1B1.3(a)(2), courts calculate guideline ranges based on uncharged drug amounts that were "part either of the same course of conduct as the charged offense or of a common scheme or

plan including the charged offense." *United States v. Hawk*, 434 F.3d 959, 962 (7th Cir. 2006) (internal citation omitted); *see United States v. Bullock*, 454 F.3d 637, 641 (7th Cir. 2006). Offenses are part of the same course of conduct if they are "part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2) app. n.9(B). Factors to be considered in this analysis include the degree of similarity of the offenses, the regularity (repetition) of the offenses, and the temporal proximity between the offenses. *See id.*; *Ortiz*, 431 F.3d at 1040; *United States v. Sumner*, 325 F.3d 884, 889 (7th Cir. 2003). [1]

We believe the district court correctly concluded that the two events were sufficiently similar. Both involved Gadson's distribution or arguably attempted distribution of about an ounce of crack in Joliet by hiding and transporting the drugs in his car. *See United States v. Arroyo*, 406 F.3d 881, 890 (7th Cir. 2005) (uncharged drug offenses part of the same course of conduct where, among other things, defendant used similar means to transport drugs to customers); *United States v. Howard*, 80 F.3d 1194, 1203 (7th Cir. 1996) (drug sales occurring in multiple locations in the Carbondale area supported court's determination that the deals were part of the same course of conduct); *United States v. Montgomery*, 14 F.3d 1189, 1198 (7th Cir. 1994) (drug deals part of the same course of conduct where there were "repeated sales of the same quantity of the same substance at approximately the same location through similar means"); *United States v. Cedano-Rojas*, 999 F.2d 1175, 1181 (7th Cir. 1993) (drug transactions part of the same course of conduct where they all took place in the Chicago area and involved the same amount of the same substance). The factors here supporting a finding that the two events were properly treated as relevant conduct distinguish this case from *United States v. McGowan* (case no. 06-1546, decided today, February 28, 2007), where 8 months separated the events and they involved dissimilar amounts and different players.

Gadson's attempt to distinguish the December 2002 offense because it involved possessing instead of distributing crack is also unavailing; the 26.3 grams he possessed is a distribution amount, *see, e.g., United States v. Wash*, 231 F.3d 366, 371 (7th Cir. 2000) (5.4 grams of crack considered a distribution amount).

---

[1] As the government points out, the district court did not specify whether the additional crack amounted to the "same course of conduct" or was part of a "common scheme or plan" as the underlying offense. But because the government has demonstrated by a preponderance of the evidence that the additional crack was part of the "same course of conduct" as the underlying offense, we need not analyze whether the offenses were also part of a "common scheme or plan."

Gadson also argues that the two offenses four months apart were not sufficiently proximate in time to be considered part of the same course of conduct. Four months, however, is a time interval we have deemed close enough to demonstrate a temporal connection. *See United States v. Griffin*, 194 F.3d 808, 828 (7th Cir. 1999) (four months between offense and relevant conduct); *Montgomery*, 14 F.3d at 1198 (upholding 5-month interval); *cf., United States v. Johnson*, 324 F.3d 875, 879-80 (7th Cir. 2003) (span of more than one year suggests separate character of conduct where offense involved individual crack sales and unrelated conduct involved participation in powder cocaine conspiracy); *United States v. Ruiz*, 178 F.3d 877, 882 (7th Cir. 1999) (two-year gap between conduct suggests separate offenses).

For these reasons, the judgment of the district court is AFFIRMED.