In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4265

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN WILLIAMS, also known as
TWIN,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 CR 30080--Jeanne E. Scott, Judge.

Argued May 10, 2000--Decided June 19, 2000


   Before EASTERBROOK, RIPPLE and ROVNER,
Circuit Judges.

   ROVNER, Circuit Judge.  A jury convicted
Kevin Williams of conspiracy to
distribute cocaine base, in violation of
21 U.S.C. secs. 841(b)(1)(A) and 846.
Williams now challenges the sufficiency
of the evidence, the district court's
admission of evidence of other bad acts,
and his sentence. We affirm.

I.

   Williams was charged with conspiring
with Eric Powell and others to distribute
cocaine and cocaine base. Powell was a
childhood friend of Williams who
testified under a grant of immunity as
part of a plea agreement with the
government. Powell testified that from
mid-1997 through October 1998, Williams
provided him with crack cocaine on a
regular basis. Approximately every other
day, Williams provided Powell with
quantities ranging from one-eighth of an
ounce to two full ounces of crack
cocaine. Sometimes Powell collected money
from the ultimate buyer up-front and paid
Williams for the drugs at the time Powell
received them. Other times, Williams
provided Powell with cocaine base with
the expectation that Powell would pay him
after he sold the drugs, a practice known

as "fronting." Powell and Williams often communicated using cellular phones, and many of their discussions were recorded by the FBI under a court-authorized wiretap. At trial, Powell and seven other witnesses who knew Williams well identified Williams' voice on the tapes. The conversations were brief and in code, as Powell explained at trial. Powell called whenever he had a buyer and needed to meet with Williams to replenish his supply of crack cocaine. Using a language that was all their own, Powell and Williams discussed quantities and prices, as well as times and places for the transactions to take place.

Powell's girlfriend Yvonne Persley also testified. She had been charged with assisting Powell in his drug business, and at the time of Williams' trial she was awaiting sentencing for her role in the scheme. She testified that Williams was at her house with Powell several times a week, that she heard Powell on the telephone with Williams arranging to receive a "package" for one of Powell's drug customers, and that she twice saw Williams in possession of wads of cash the size of a tennis ball. Larry Austin, who had been charged with conspiring with Powell, testified under a grant of immunity that he saw Williams sell crack. David Jackson, another of Powell's co-conspirators, testified that he purchased crack directly from Williams during the relevant time period. Finally, Powell's brother, Deshawn Powell, testified that he saw Williams sell crack to Powell in the summer and early fall of 1998.

Before trial, the government filed notice that it wished to introduce evidence from five witnesses concerning their observations of Williams possessing and selling crack cocaine during the time of the conspiracy, but not directly relating to the conspiracy with Powell. The court carefully considered the government's proffer, applying the four-part test set out by this Court in analyzing the evidence. The district court ruled that the prejudice of some of the evidence outweighed its probative value, and this evidence was excluded. The district court ruled that other evidence was relevant to method of operation, motive to conspire and availability of the drug to the defendant, and that the prejudice did not

outweigh the probative value for this evidence. The court offered to give limiting instructions to the jury, an offer that Williams accepted. At trial, the court instructed the jury both at the time the evidence was admitted and during final instructions that this other bad acts evidence was to be considered for a limited purpose only, that it could not be used as direct evidence of the crime charged but rather could be used only to show motive, opportunity and method of operation. After the first two "bad acts" witnesses testified, the court further limited the government, believing that additional bad acts testimony would be cumulative. Although the court ruled that the government could put on one more such witness, the government declined to put in further bad acts evidence. The jury subsequently convicted Williams, and the court sentenced him to 151 months of incarceration.

II.

On appeal, Williams first asserts that the evidence was insufficient to allow any rational jury to find that he was guilty of conspiring to distribute a controlled substance. Williams acknowledges the formidable hurdle he must overcome to successfully challenge the sufficiency of the evidence. See United States v. Van Dreel, 155 F.3d 902, 906 (7th Cir. 1998). Viewing the evidence in the light most favorable to the government, we reverse only if the record contains no evidence from which the jury could find guilt beyond a reasonable doubt. Id. Williams claims the government's case must fail because the witnesses presented against him were not credible, and there was no corroborating evidence. The essence of Williams' claim is that Powell lied to the government in the process of reaching his plea agreement, and as a result, the government was forced to enter into a second cooperation agreement with Powell. Thus, by the government's own account, Powell was a liar. Moreover, some of the government's other witnesses contradicted certain testimony by Powell. Williams concludes that Powell was incredible as a matter of law. Williams also complains that the government failed to produce any corroborating physical evidence, such as the drugs Williams distributed. In these circumstances, Williams contends, his

conviction cannot stand.

Credibility determinations are within the province of the jury, and we reverse such determinations on appeal only under exceptional circumstances, such as "where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." United States v. Ruiz, 178 F.3d 877, 880 (7th Cir. 1999), cert. denied, 120 S. Ct. 229 (1999) (quoting United States v. Hach, 162 F.3d 937, 942 n.1 (7th Cir. 1998), cert. denied, 119 S. Ct. 1586 (1999)). Because Williams has failed to allege any such special circumstances here, his challenge to the sufficiency of the evidence is without merit. Ruiz, 178 F.3d at 880; Van Dreel, 155 F.3d at 906. We must leave open the possibility that even a liar tells the truth once in a while, and the jury is in the best position to judge Powell's credibility.

Williams next contends that the district court abused its discretion in admitting evidence of other bad acts committed by him. Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The government provided notice in advance of trial, and Williams does not challenge the adequacy of that notice. Rather, he complains that the district court conducted only a cursory review of the proffered evidence, and that the admission of this evidence led the jury to convict him based solely on his bad character. The prejudicial effect of the evidence, he contends, greatly exceeded the probative value.

We review rulings determining the admissibility of evidence under Rule 404(b) for an abuse of discretion. United States v. Wiman, 77 F.3d 981, 984 (7th Cir. 1995). The district court applies a four-part test to determine the admissibility of 404(b) evidence: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. United States v. Asher, 178 F.3d 486, 492 (7th Cir. 1999), cert. denied, 120 S. Ct. 359 (1999). The only prong of this test that Williams cites is the last one, and so we will focus our attention there as well.

The district court engaged in a careful analysis of the evidence the government proffered, and decided that, on balance, some of the evidence should be excluded. Thus the court excluded evidence that Williams' pit bull dog had dug up drugs in his yard in the summer of 1997 or 1998, finding that the reputation of the pit bull was such that there was a danger the jury would be unduly prejudiced. But the court ruled admissible evidence from five different witnesses that they had either seen Williams in possession of crack cocaine or that they had personally purchased crack from Williams in 1997 and 1998. The court found that this testimony would establish Williams' method of operation, his motive to conspire, and the availability to Williams of drugs. The court also determined that the conduct was similar to the charged conduct and close enough in time to the charged conduct to be relevant. Because these witnesses were making statements against their own interest, the district court found that the evidence set forth in the government's proffer would be sufficient to support a jury finding. Finally, the court found that the probative value of the evidence was not outweighed by the prejudice. In order to minimize the prejudicial effect of the evidence, the court offered to give limiting instructions, and Williams

accepted this offer. The court gave the instructions twice, once when the witnesses testified, and again in final instructions.

We assume that jurors follow the court's instructions, unless there is substantial evidence to the contrary. United States v. Hernandez, 84 F.3d 931, 935 (7th Cir. 1996). Moreover, we accord great deference to the district court's assessment of the evidence because of the judge's first-hand exposure to the evidence and because of the judge's familiarity with the case and ability to gauge the impact of the evidence on the jury in the context of the trial. Asher, 178 F.3d at 494. Because the court properly applied the four-part test and observed numerous safeguards to reduce the possibility of unfair prejudice, we conclude that the district court did not abuse its discretion in admitting the Rule 404(b) evidence.

Williams' final challenge is to the two-point sentence enhancement he received for gun possession under U.S.S.G. sec. 2D1.1(b)(1). That provision requires a two-level enhancement if a weapon was possessed during the commission of a drug offense, unless it is clearly improbable that the weapon was connected to the offense. Williams complains that the government's evidence in support of the enhancement is "scant." The guns were seized from a car parked at the home of Williams' girlfriend approximately five months after Williams was arrested, and no drugs were ever found. The government notes that Williams was living with his girlfriend at the time of the seizure and that this seizure merely corroborated testimony from David Jackson, a co-conspirator of Powell, that he had seen Williams in possession of a number of different guns during the time Williams was dealing crack cocaine. We need not decide if the government's evidence was sufficient, however, because Williams received the statutory minimum sentence for a person with a prior felony drug conviction who is subsequently convicted of an offense involving in excess of 50 grams of crack. Williams does not dispute that he was eligible for this statutory minimum or that he in fact received the statutory minimum. As a result, his challenge to the two-level enhancement is moot, and we need not decide the issue. See United States v. Ivory, 11 F.3d 1411,

1413 (7th Cir. 1993). For all of these reasons, the judgment of the district court is

AFFIRMED.