In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1290

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

QUAN JOHN RAY, a/k/a "Q,"

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 CR 379--Suzanne B. Conlon, Judge.

Argued September 8, 2000--Decided January 24, 2001

Before FLAUM, Chief Judge, POSNER and ROVNER,
Circuit Judges.

ROVNER, Circuit Judge.  Quan John Ray appeals his
convictions for murder in furtherance of a
continuing criminal enterprise, murder of a
person assisting a federal criminal
investigation, distribution of cocaine, and
conspiracy to possess with intent to distribute
cocaine, crack cocaine, heroin and marijuana. Ray
raises a number of challenges to his jury trial,
contending that (1) he could not be convicted of
murder in furtherance of a continuing criminal
enterprise ("CCE") unless he was also charged
with being a member of the enterprise; (2) the
evidence was insufficient to convict him of
murder in furtherance of a CCE or murder of a
person assisting a federal criminal
investigation; (3) instructing the jury that they
"should" acquit rather than "must" acquit if the
government failed to meet its burden constituted
reversible error; (4) his conviction for
narcotics distribution violated the double
jeopardy clause; and (5) the court erred in
refusing to excuse for cause a juror who
allegedly gave inconsistent answers on a jury
form and in voir dire. We affirm.

I.

Ray was a member of the Gangster Disciples, a
street gang that controlled narcotics

distribution in certain parts of Chicago. The gang was organized in a strict hierarchical structure, and imposed a code of conduct on its members. The group was led by Larry Hoover, who held the rank of chairman of the board. The other ranks in descending order were board members, governors, assistant governors, enforcers, regents, assistant regents, coordinators, chiefs of security, treasurers and foot soldiers. Ray's role in the gang was that of enforcer and security guard. Ray also sold drugs while working for the gang, at one point selling a small amount of crack cocaine to an undercover Chicago police officer. He provided security for Darryl Lamont Johnson, a powerful board member for the gang. As an enforcer, Ray was called upon to punish gang members who violated the rules. One of the most important rules was to maintain silence and secrecy regarding the gang's activities. At some point, gang leadership became aware that one member, Charles Banks, was cooperating with federal law enforcement authorities in an investigation of the Gangster Disciples, in violation of the silence and secrecy rule.

When Darryl Johnson learned of this violation, he ordered Ray to murder Banks. After Ray's first attempt to kill Banks failed, Johnson once again ordered Ray to murder Banks. On June 9, 1995, Ray succeeded in his appointed task. Ray obtained a gun from a gang member, approached Banks from behind as Banks was talking with another gang member, and shot him in the back of the head twice. As Banks fell to the ground, Ray repeatedly shot him in the face and head. A number of gang members witnessed the murder. Ray fled the scene and reported back to gang leadership that he had killed Banks. Johnson then purchased a used Oldsmobile for Ray in payment for the murder. Both Ray and Johnson were concerned about the consequences of the murder and Johnson instructed fellow gang members to blame the murder on a rival gang. Ray warned other gang members that they could face the same fate as Banks if they violated the rule against silence and secrecy. Johnson decided that Ray should leave the area for a while and keep a low profile because Chicago law enforcement was executing search warrants. Ray traveled to Minnesota in order to evade detection.

A grand jury issued a fifty-one count indictment charging Ray and Johnson with a variety of offenses. Four counts specifically applied to Ray. Count One charged Ray with conspiring to possess with intent to deliver cocaine, cocaine base, heroin and marijuana. Count Seven charged him with murder of a person assisting a federal criminal investigation. Count Eight alleged that Ray committed murder in

furtherance of a continuing criminal enterprise, and Count Nine charged him with distributing cocaine to an undercover Chicago police officer. After the government notified Ray of its intention to seek the death penalty for the murder counts, Ray moved to sever his case from Johnson's and hold a separate trial. The court granted the motion and Ray was tried apart from Johnson. The jury found Ray guilty on all four counts, but determined that he should not be sentenced to death. The district court sentenced Ray to life imprisonment without the possibility of release on Counts Seven and Eight, but stayed sentencing on the drug counts pending appeal. Ray appealed, but we determined that we lacked jurisdiction because there was not a final judgment due to the incomplete sentencing. We remanded to allow the district court to complete the sentencing. The district court sentenced Ray to life imprisonment on Count One and to twelve months imprisonment on Count Nine. With a final judgment now in hand, Ray again appeals his conviction on all four counts.

II.

Ray raises five main challenges to the jury verdict. First, he maintains that he could not be convicted of murder in furtherance of a CCE where he was not charged with nor convicted of being a member of the CCE. He argues that this is especially problematic in light of inadequate and improper jury instructions relating to that count. Second, he alleges that the evidence on both of the murder counts was insufficient because the witnesses against him were incredible as a matter of law. Third, he contends that the jury instructions were fatally flawed because they directed the jury that it "should" acquit rather than "must" acquit if the government failed to meet its burden. Fourth, he maintains that his conviction for distributing cocaine violated the double jeopardy clause because he had already been convicted in state court of an identical offense for the same transaction. Finally, he claims that the court erred in refusing to dismiss for cause a juror he believes gave contradictory answers on a jury form and in voir dire.

A.

Ray raises a two-pronged attack on his conviction for murder in furtherance of a continuing criminal enterprise. We review de novo his statutory interpretation claim that a person may not be convicted of murder in furtherance of a CCE without also being charged with and convicted of being engaged in a CCE. United States v. Jain, 174 F.3d 892, 897 (7th Cir.

1999), cert. denied, 528 U.S. 889 (1999). Because Ray did not object to the jury instruction in question at trial, we review the district court's instructions for plain error. United States v. Gee, 226 F.3d 885, 890 (7th Cir. 2000). In addition to finding that the error is plain, meaning obvious or clear, we must find that the error affects substantial rights before we will reverse a conviction under this standard. Id.; United States v. Olano, 507 U.S. 725, 732-34 (1993).

The statute under which Ray was charged and convicted reads, in pertinent part:

[A]ny person engaging in or working in furtherance of a continuing criminal enterprise . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

21 U.S.C. sec. 848(e)(1)(A). Count Eight of the indictment tracked the language of the statute, charging that Ray and Darryl Johnson, "while engaged in and working in furtherance of the continuing criminal enterprise described in Count Two of this indictment, intentionally killed and counseled, commanded, induced, procured and caused the intentional killing of Charles 'Jello' Banks, and such killing resulted." Ray was not charged in Count Two of the indictment, and contends that he may not be charged with nor convicted of a murder in furtherance of a CCE unless he also was charged with and convicted of engaging in a CCE. The government's theory at trial was that so long as it proved that Ray committed the murder in furtherance of the CCE, it need not prove that he was engaged in the CCE. The government fashioned jury instructions to account for this theory, and the district court directed the jury that it must find that Ray was "engaging in or working in furtherance of" the CCE charged when he participated in the killing of Charles Banks. Tr. at 1522. Because Ray was not charged with being engaged in the CCE, and because Darryl Johnson was being tried separately, the court further instructed the jury that before they could consider whether Ray committed an act while engaging in or in furtherance of a CCE, the government must establish beyond a reasonable doubt that a CCE existed. The court then instructed the jury using the definition of CCE provided in 21 U.S.C. sec. 848(c), with a slight modification that Ray finds objectionable. The statute defines CCE by stating that "a person is engaged in a continuing

criminal enterprise if" he commits certain felonies as part of a continuing series of violations which are undertaken with five or more other persons. There are a number of other requirements as well in order to meet the statutory definition but the language to which Ray objects is contained in the portion quoted. The district court directed the jury that they could find a CCE if "at least one person" committed a continuing series of offenses, acting in concert with five or more other persons. Ray complains that there is "no legal basis for changing the statute's prohibition against the acts of the person to make a finding that 'at least one' other person committed the acts with which the Defendant is now alleged to have acted in concert." Appellant's Brief at 14. We take Ray's objection to be that by changing the language of the statute, the court expanded liability beyond persons engaged in the CCE to persons committing acts in furtherance of the CCE. Ray's essential objection is that he could not be charged with committing a murder in furtherance of a CCE unless he was also charged with being engaged in a CCE. Because he was not charged in the primary CCE count, he contends he could not be charged with murder in furtherance of the CCE.

The government maintains that we answered this question decisively in United States v. Cooper, 19 F.3d 1154 (7th Cir. 1994). There the defendant was charged with murder while working in furtherance of a continuing criminal enterprise. On appeal, the defendant complained that because he was not engaged in the drug activities that comprised the felony charges behind the CCE, and because there was no connection demonstrated between the murder and any drug transactions, he could not be convicted of murder in furtherance of the CCE. He contended that the "murder in furtherance" provision applied only to drug kingpins actually engaged in the CCE. We disagreed because such a limitation in the application of the statute would render the words "in furtherance of" superfluous and without substantive meaning. In effect, every person charged with murder in furtherance of the CCE would also have to be charged with engaging in the CCE, contrary to the express language of the statute. We then defined the term "in furtherance of" a CCE to mean working to promote or advance the interests of a CCE. 19 F.3d at 1165.

The Tenth Circuit expounded on this theme in a case where the defendant caused a murder that, because of the mistaken identity of the victim, did not actually further the goals of the CCE. See United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996), cert. denied, 520 U.S. 1213 (1997).

The court held that the defendant need not be engaged in the drug trafficking portion of the enterprise to be convicted under section 848(e) because "the reach of section 848(e) extends to hired henchmen, like [the defendant], who commit murder to further a drug enterprise in which they may not otherwise be intimately involved." 76 F.3d at 1103. In other words, a person charged with committing a murder in furtherance of a CCE under section 848(e) need not be engaged in the CCE. The court also held that the key factor was that the murder was designed and intended to further the enterprise, notwithstanding any failure to fulfill that goal. Id.

We turn then to Ray's claim in this case. Using the same reasoning we applied in Cooper, and the Tenth Circuit applied in McCullah, Ray need not be charged with engaging in the CCE so long as the government is able to prove that a CCE existed and Ray committed murder in furtherance of the CCE. The jury instructions defining the CCE closely tracked the statutory language and we find no error in the court's choice of words. The use of the phrase "at least one person" instead of "a person" is irrelevant because the person engaged in the CCE and the person charged with committing murder in furtherance of the CCE need not be the same person. A defendant need not be charged with engaging in the CCE to be charged with and convicted of committing murder in furtherance of the CCE. To hold otherwise would, as we stated in Cooper, render the words "in furtherance of" superfluous. We therefore affirm Ray's conviction on Count Eight.

B.

Ray next contends that the evidence against him on both of the murder counts was insufficient because the witnesses against him were incredible as a matter of law. The evidence on those counts consisted entirely of the vague and contradictory testimony of incredible gang members who were impeached, according to Ray. Some of the gang members testified under grants of immunity and Ray maintains this violated 18 U.S.C. sec. 201(c)(2), which prohibits giving anything of value in exchange for testimony. Finally, Ray argues that there was no physical evidence tying him to the murder and no unbiased eyewitness testimony. Ray faces a formidable hurdle to successfully challenge the sufficiency of the evidence. See United States v. Van Dreel, 155 F.3d 902, 906 (7th Cir. 1998). Viewing the evidence in the light most favorable to the government, we reverse only if the record contains no evidence from which the jury could find guilt beyond a reasonable doubt. United States v. Combs, 222 F.3d 353, 362 (7th Cir.

2000). "Credibility determinations are within the province of the jury, and we reverse such determinations on appeal only under exceptional circumstances, such as 'where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'" United States v. Williams, 216 F.3d 611, 614 (7th Cir. 2000) (citing United States v. Ruiz, 178 F.3d 877, 880 (7th Cir. 1999), cert. denied, 528 U.S. 897, 120 S.Ct. 229, 145 L.Ed.2d 192 (1999) (quoting United States v. Hach, 162 F.3d 937, 942 n.1 (7th Cir. 1998), cert. denied, 526 U.S. 1103, 119 S.Ct. 1586, 143 L.Ed.2d 680 (1999))). Ray has not alleged any such special circumstances here, and so his challenge to the sufficiency of the evidence based on the credibility of impeached gang members is without merit. Williams, 216 F.3d at 614.

We also reject Ray's challenge under Section 201(c)(2). Ray maintains that the testimony of a number of witnesses against him was tainted by the fact that they were offered leniency in exchange for their testimony, in violation of 18 U.S.C. sec. 201(c)(2). That statute prohibits offering anything of value to a person in exchange for their testimony. It is well-settled in this Circuit that the government's grant of leniency is not a "thing of value" under the statute. See United States v. Febus, 218 F.3d 784, 796 (7th Cir. 2000), cert. denied, 121 S.Ct. 587 (2000). Moreover, Section 201(c)(2) creates criminal liability, not a private right of action or rule of evidence. As such it does not provide the basis for the exclusion of evidence. Id. Finally, the government points out that there was evidence corroborating the testimony of the gang members, contrary to Ray's claim. For example, the government presented tapes of telephone calls relating to the purchase of a car for Ray in payment for the murder, and to the banishment of Ray from Chicago in order to evade detection by the police following the murder. For all of these reasons, Ray's challenge to the sufficiency of the evidence fails.

C.

Ray objects to the district court's instruction to the jury that it "should" acquit rather than "must" acquit if the government failed to meet its burden. Ray did not object to this instruction at trial and therefore we review for plain error. United States v. Moore, 115 F.3d 1348, 1362 (7th Cir. 1997). The language used by the district court in instructing the jury is modeled on Seventh Circuit Pattern Jury Instruction 4.01, which states, in relevant part:

If you find from your consideration of all of the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty [of that charge]. If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty [of that charge].

Committee on Federal Criminal Jury Instructions for the Seventh Circuit, November 30, 1998, Instruction 4.01./1 This is not the first time a defendant has raised this particular challenge, and as we stated previously:

"Must" is preferable; but it is hardly plausible that the jury supposed that while they "should" acquit [the defendant] if he was not guilty beyond a reasonable doubt, they didn't have to acquit him if they didn't want to. Juries know better than that. We add that the judge also said that the jury "should," not "must," convict [the defendant] if they found that he was guilty beyond a reasonable doubt. In context, "should" was imperative--not hortatory--throughout the instruction.

United States v. Kerley, 838 F.2d 932, 940 (7th Cir. 1988). Although we continue to believe that "must" is preferable to "should," the use of "should" was not plain error.

D.

We turn then to Ray's claim that his conviction for distributing cocaine violated the double jeopardy clause because he had already been convicted in state court of an identical offense for the same transaction. Although he concedes that the dual sovereignty doctrine normally allows successive prosecutions in state and federal court for the same act, he contends that under the particular facts of this case, that doctrine should not apply. The distinguishing fact here, according to Ray, is that the only witness against him in the federal prosecution was the undercover Chicago police officer who also testified against him in the state proceeding. Moreover, he points out that the case agent in the federal prosecution was also a Chicago police officer. Under Blockburger v. United States, 284 U.S. 299 (1932), Ray maintains that there were no elements of the crime in the federal case that were different from the elements of the state offense, and thus the two offenses were not sufficiently distinguishable to permit imposition of cumulative punishment.

We review double jeopardy claims de novo, but

defer to the district court's factual findings. United States v. Lippitt, 180 F.3d 873, 876 n.4 (7th Cir. 1999), cert. denied, 528 U.S. 958 (1999). Ray's arguments fail under well-established precedent. As Ray concedes, the Double Jeopardy Clause is inapplicable when two different sovereigns prosecute the same defendant. Heath v. Alabama, 474 U.S. 82, 88 (1985); United States v. Tirrell, 120 F.3d 670, 676 (7th Cir. 1997). In Tirrell, we held that a state conviction did not preclude a federal prosecution even when the two offenses amounted to the same offense under Blockburger and its progeny. 120 F.3d at 677. Moreover, the use of common witnesses for both the state and federal prosecutions does not violate the Double Jeopardy Clause. United States v. Jordan, 870 F.2d 1310, 1313 (7th Cir. 1989), cert. denied, 493 U.S. 831 (1989). We therefore affirm Ray's conviction for distribution of cocaine.

E.

Finally, Ray challenges the district court's refusal to dismiss for cause a juror that Ray believes gave contradictory answers on a jury form and in voir dire. According to Ray, the prospective juror (whom we'll call Juror Doe) testified during voir dire that he had taught criminalistics to police officers fifteen years earlier, and that he had not had any contact with law enforcement in the last twenty years./2 Ray states that in the juror questionnaire Juror Doe filled out before voir dire, he stated he had contact with various California police agencies, and officers in commanding positions. Juror Doe also stated in the questionnaire that he was a consultant in security and antiterrorist activities. Ray believed these responses were contradictory and asked the court to excuse Juror Doe for cause. The court declined and Ray then used a peremptory challenge to exclude Juror Doe from the jury pool. The government characterizes Juror Doe's responses somewhat differently. According to the government, Juror Doe told the court in voir dire that he taught criminalistics to police officers in California approximately fifteen years ago, and had not had any contact with his students since leaving that position, with the exception of receiving Christmas cards from some of them. On the juror questionnaire, according to the government, Juror Doe responded to a question about "family members, close friends employed by local law enforcement" by listing "various California police agencies (former students)." The government claims these responses are not inconsistent because the questions focused on different areas. The questions posed by the court during voir dire related to contacts with law enforcement, whereas

the questionnaire related to friends and relatives.

Unfortunately, the juror questionnaire does not appear in the record, so we must base our analysis on a review of the transcript alone. The colloquy between the court and Juror Doe evidences some confusion on the issue of contacts with law enforcement. After resolving a number of unrelated issues, the court asked Juror Doe whether there was anything he wished to bring to the court's attention that might bear on his ability to base a verdict solely on the evidence presented in court. Juror Doe responded that "15 years ago I was a professor at San Jose State University, and--in administration of justice. I taught criminalistics to police officers." The court then asked if this would affect Juror Doe in some way and he replied, "I don't think so because I've been out of that contact--that arena since moving to Chicago 20 years ago." In order to clarify the disparity in time frame between when he was teaching police officers in California and when he moved to Chicago, the court asked Juror Doe if he had any contact with law enforcement "in the last 20 years since you left San Jose State?" Juror Doe responded, "No I haven't. Just former students that send me Christmas cards." When Juror Doe left the room, Ray's attorney objected on the grounds that Juror Doe had contradicted himself. Counsel also pointed out that in Doe's questionnaire, he had responded to a question about belonging to "churches, associations, etc." by stating he was a "consultant security/antiterrorist." Counsel asked the court to question Juror Doe about this answer. The court agreed to recall Juror Doe for further questioning but stated that his answers were not inconsistent because the oral questions were posed in a different context than the written questions.

The court recalled Juror Doe and asked him about his current job. He replied that he was in management, and he confirmed to the court that this job did not involve security. Upon further questioning, Juror Doe revealed that he was also a reservist for the Federal Emergency Mobilization Agency, and that his specialty there was in "antiterrorists." He stated he had "a secret clearance from the government," and would be activated into service if Congress declared war. His job would be as a "paramilitary" and he would also work for the government "in the area of antiterrorists." His position was as a National Defense Executive Reservist, and he performed these duties on a volunteer basis. He clarified for the court that he was simply on call, and that once a year, he was updated by the military and the CIA on different antiterrorist

groups throughout the United States. Upon questioning, he confirmed to the court that none of these activities would influence his view of the evidence in this case.

Defense counsel challenged Juror Doe for cause based on the fact that he had represented to the court that he was not involved in security but had indicated on his questionnaire that he was a security consultant. On the basis that Juror Doe was "not entirely candid with the Court about all of what his current employment is and current activities are," counsel moved to dismiss Juror Doe for cause. The court overruled Ray's objections, and stated, "I don't think he's been dishonest with us. It's a rather complex situation, and I think we're looking at several things out of context." Ray then exercised a peremptory challenge against Juror Doe. Although the colloquy is not a model of clarity, the district court was correct that Juror Doe answered consistently on the issue of whether he was involved in security. He answered that his primary employment did not involve security but that he held a volunteer position with a federal agency, and that position did involve security. The court also clarified Juror Doe's answers involving his contacts with law enforcement, verifying that he was not currently in contact (with the exception of Christmas cards) with any former law enforcement students. We afford great deference to the district court based on the judge's unique opportunity to assess juror credibility during voir dire. United States v. Nururdin, 8 F.3d 1187, 1190 (7th Cir. 1993), cert. denied, 510 U.S. 1206 (1994). The district court expressly found that Juror Doe was not misleading the court, but rather that the juror's job situation was complex and counsel was taking certain oral and written answers from the juror out of context. The district court did not abuse its discretion in declining to dismiss Juror Doe for cause.

III.

In summary, we find no error in the indictment or the jury instructions regarding murder in furtherance of a CCE. Moreover, the evidence was sufficient to convict Ray of murder in furtherance of a CCE as well as murder of a person assisting a federal criminal investigation. Directing the jury that it "should" acquit if the government failed to meet its burden was not erroneous, and Ray's federal conviction for distributing cocaine was not precluded by his state prosecution for the same offense. Finally, the court did not abuse its discretion in refusing to dismiss for cause a juror who gave somewhat confusing responses to

the court during voir dire. For all of these reasons, we AFFIRM the judgment of the district court.

/1 The bracketed material, according to Committee notes, is optional language that may be used in appropriate cases.

/2 Criminalistics is defined as scientific crime detection.