**Ozzie PICKETT, Plaintiff–Appellant,**

v.

**Correctional Officer LINDSAY, Correctional Officer Betts, et al., Defendants–Appellees.**

No. 01–3755.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 2002.

Decided Dec. 31, 2002.

Before EASTERBROOK, RIPPLE, and MANION Circuit Judges.

## ORDER

Ozzie Pickett, an Illinois prisoner, brought suit against several prison guards under 42 U.S.C. § 1983. The jury found in favor of defendants. Pickett now argues that he is entitled to a new trial because: the verdict was against the manifest weight of the evidence; defense counsel's improper closing argument was "clearly injurious" to Pickett's case; and the district court committed prejudicial error by excluding from evidence a disciplinary summary favorable to Pickett. We affirm.

## I.

The Illinois Department of Corrections presently incarcerates Ozzie Pickett at the "supermax" maximum security prison in Tamms, Illinois. Pickett brought an action against various correction officers under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Illinois. Pickett's suit arose from events that allegedly occurred in 1997 and 1998 while he was an inmate at the Stateville Correctional Center in Joliet, Illinois. Pickett alleged that defendants, who were guards at Stateville, violated his Eighth Amendment and due process rights by: (1) confining him in conditions that violate the Eighth Amendment; (2) using excessive force against him on four separate occasions; and (3) making false statements against him that led to inappropriate disciplinary action, including his transfer to Tamms.

As to the charge of conditions in violation of the Eighth Amendment, the jury heard Pickett's testimony to the effect that, from April 5 to April 10, 1997, guards kept him in a cell that had a broken window and was thus "very cold" and contained snow. He also testified that he had no bedding and that complaints to defendant Lindsay went unheeded, although another officer gave him a "plastic bag and tape" to place over the window. Because of these conditions, Pickett testified, he felt ill and caught a cold. On cross-examination, however, Pickett testified that he could not recall stating that he had caught a cold in an April 20th letter that he had written to a prison doctor.

An Officer Duvall testified, on the other hand, that she had inspected Pickett's cell and that her log reflected that the window was fixed when Pickett was assigned to the cell. In a similar vein, a Cpt. Manning testified that the window to the cell was not broken and that he had not seen snow in the cell. The jury also viewed weather reports for the Joliet area indicating that outside temperatures during Pickett's six days in the cell ranged from a high of 68 degrees Fahrenheit to a low in the 20's.

Regarding the claims of excessive force, the jury heard evidence concerning four alleged incidents. The first alleged incident happened in June 1997 and concerned guards' alleged slamming of Pickett's hands in the chuckhole of his cell ("the chuckhole incident"). Pickett testified that, after defendant Lindsay had deliberately passed his cell without serving him lunch, Pickett hollered and placed his hands through the chuckhole. According to Pickett, guards then proceeded to slam repeatedly the chuckhole door on his hands. The jury also heard Lindsay's tes-

timony to the effect, however, that Pickett had thrown a tray at him, that Lindsay therefore tried to shut Pickett's chuckhole, and that Pickett sustained minor injuries while resisting guards' efforts to close the chuckhole. Cpt. Manning's testimony corroborated Lindsay's account by stating that he saw food on Lindsay, and Pickett himself testified that he continued to keep his hands in the chuckhole as guards tried to close it. The inmate injury report that Pickett adduced stated that, after the chuckhole incident, Pickett received iodine, ice packs, and Tylenol for his injuries.

The second alleged incident of excessive force occurred in July 1997, when three guards allegedly used excessive force by beating Pickett while he was handcuffed in a holding cell ("the holding cell incident"). Pickett testified that the three guards beat and insulted him because he had earlier yelled about not receiving needed medical attention. The defendants presented testimony to the effect that Pickett had lunged at Lindsay as guards were removing Pickett from the holding cell and that guards then used necessary force to restrain Pickett. The inmate injury report that Pickett put forth showed that Pickett suffered a "minor laceration" to his left ear, a broken nose, redness in the "back medial area," a mild contusion to the shoulder, and a hematoma to the lip.

The third alleged incident of excessive force occurred in October 1997, when Pickett was in the shower ("the shower incident"). Pickett testified that defendant Hall placed him in a shower cell and removed one of his handcuffs, whereupon Pickett, before he would allow Hall to remove the other handcuff, demanded to see a lieutenant about Hall's refusal to provide Pickett with a razor. According to Pickett's testimony, Hall then left, returned "a couple of seconds later," and slammed Pickett to the floor, where two other offi-cers began punching him. Officer Hall testified, however, that he was escorting Pickett from the shower when he slipped off one of his handcuffs and attempted to punch Hall, at which point the guards used necessary force to restrain Pickett. According to Pickett's testimony, a prison medic told him shortly after the altercation that there was "nothing wrong with" him, and that he "would be all right."

The fourth and final alleged incident of excessive force happened in April 1998, when guards confined Pickett to a strip cell ("the strip cell incident"). Pickett testified that guards punched him and confined him to a strip cell for defying orders not to kick his cell door, which he denied having done. Defendants presented testimony to the effect that Pickett had defied orders to stop kicking his cell door, and that they were obliged to use the requisite force to restrain him upon taking him to a strip cell. Pickett received no medical attention following this alleged incident, and there is no documentary evidence that he was injured because of this incident.

The final basis of Pickett's suit is that defendants Lindsay and Hall allegedly lied about him attacking them in the preceding incidents, resulting in wrongful disciplinary action being taken against him in the form of a transfer to Tamms.

In January 2001, a jury returned a verdict in favor of all eight defendants on all counts. On September 27, 2001, the district court denied Pickett's Rule 59 motion for post-trial relief, holding that Pickett was not entitled to a new trial because: the verdict was not against the manifest weight of the evidence; defense counsel's improper closing argument was not "clearly injurious" to Pickett's case; and the district court did not commit prejudicial error by excluding from evidence part of exhibit 36, which was a disciplinary summary regarding the shower incident.

Pickett appeals, raising the three issues delineated below.

## II.

We turn first to Pickett's argument that the district court erred in denying his motion for a new trial based on insufficiency of the defense's evidence. Pickett bears a heavy burden in attempting to establish that the district court should have granted a new trial: he must show the verdict was against the manifest weight of the evidence. *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989). Our review of a district court's application of this standard is deferential. *See American Nat'l Bank & Trust Co. v. Regional Trans. Auth.*, 125 F.3d 420, 431 (7th Cir.1997). We shall reverse a district court's denial of a motion for a new trial only if Pickett demonstrates that the district court abused its discretion. *Id.*

There was no abuse of discretion here. As is apparent from the factual summary above, defendants' liability hinged on a determination of credibility: regarding each of the abusive incidents that Pickett alleged, the jury had to choose whether to believe Pickett's testimony or the contradictory testimony put forth by defendants. Regarding Pickett's first claim, confining a prisoner in extremely cold temperatures could violate the Eighth Amendment's prohibition against housing prisoners inadequately. *See Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994). A reasonable jury could, however, have found the testimony adduced by defendants credible and concluded that the window to Pickett's cell was not broken and that Pickett therefore did not suffer the cold temperatures of which he complained. As to the claim of excessive force, the district court properly instructed the jury to consider: (1) the extent of the injury suffered; (2) the need to apply force; (3) the relationship between that need and the amount of force actually used; (4) the threat the guards reasonably perceived; and (5) any efforts to temper the severity of the force used. *Davis v. Lane*, 814 F.2d 397, 400 (7th Cir.1987). Given this standard, a reasonable jury could have believed the evidence indicating that guards used only the force necessary in responding to Pickett's physical provocations, and that Pickett suffered minor injuries resulting from his altercations with guards, all of which would lead to a verdict in defendant's favor as to this claim. Regarding Pickett's third and final claim, that his transfer to the supermax facility at Tamms violated due process because it was predicated on the guards lying about his actions, such conduct could arguably violate due process. *See Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir.1994). A reasonable jury, nonetheless, could have found credible defendants' evidence that guards had *not* lied about Pickett's behavior during the four incidents discussed above and accordingly did not violate Pickett's due process rights.

In short, the jury's verdict for defendants hinged on its assessment of the relative credibility of two sides' competing evidence. This court shall not re-weigh the jury's credibility determination on appeal absent "exceptional circumstances." *United States v. Williams*, 216 F.3d 611, 614 (7th Cir.2000). Given that Pickett has failed to allege any such exceptional circumstances, his challenge to the evidence's sufficiency lacks merit. *See id.*

We next consider Pickett's argument that defense counsel's improper closing arguments warrant a new trial. We review the district court's denial of a motion for a new trial for an abuse of discretion. *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 644 (7th Cir.1995). A district court abuses its discretion by denying a new

trial when statements made during closing argument were plainly unwarranted and caused substantial prejudice, *id.,* and the district court's response, or lack of response, to the remarks was a prejudicial abuse of discretion, *Joan W. v. City of Chicago,* 771 F.2d 1020, 1022 (7th Cir. 1985).

Pickett relies on four remarks that defense counsel ostensibly made during closing argument. He cites to counsel's reference to Pickett as a "tremendous rule violator," who was "out of control" and had a "long disciplinary history." Pickett also contends that defense counsel's statement that the State of Illinois and the Department of Corrections were not defendants gave the false impression that Illinois was not indemnifying the defendants. The district court concluded that these remarks did not warrant a new trial because, although they should not have been made, "they were unlikely to have resulted in a verdict for the defendants."

■ The ostensible remark about Pickett's "long disciplinary history" need not detain us, as our review of the transcript of defense counsel's closing argument reveals that she never said that Pickett had a "long disciplinary history." The closest defense counsel came to stating that Pickett had a "long disciplinary history" was when she mentioned that he had been sent to a segregation unit for "disciplinary reasons." Furthermore, we cannot see how this comment, even if Pickett had properly challenged it in the court below or on appeal, could have caused such prejudice as to warrant a new trial. In the context of a trial in which the jury heard, without objection, that Pickett had been convicted of rape, armed robbery, and kidnaping, we find it unfathomable that hearing that Pickett was a disciplinary problem while in prison would have affected significantly the jury's attitude toward Pickett.

As to the comments about Pickett being "out of control" and a "tremendous rule violator," the district court sustained Pickett's objection to these remarks and later instructed the jury that it should disregard any comments preceding sustained objections. Because Pickett adduces no evidence to the contrary, we conclude that the jurors followed the district court's instruction, *Williams,* 216 F.3d at 615, and therefore hold that no prejudice flowed from the remark about Pickett being "out of control" and a "tremendous rule violator." Regarding defense counsel's statement that the State of Illinois and the Department of Corrections were not defendants, Pickett did not object to this comment at trial, thereby waiving this argument. *Doe v. Johnson,* 52 F.3d 1448, 1465 (7th Cir.1995).

Even if we were to consider all of the allegedly improper statements that defense counsel made during closing argument, in light of the evidence in defendants' favor, the opportunity that Pickett's counsel had to rebut these statements in her final argument, and the minor emphasis that defense counsel placed on these comments, we would still agree with the district court that these remarks were not plainly unwarranted and substantially prejudicial to Pickett so as to warrant a new trial.

We turn to Pickett's third and final contention, that he is entitled to a new trial because the district court abused its discretion by excluding impeaching evidence. Pickett argues that the district court committed prejudicial error by excluding part of exhibit 36, a disciplinary summary regarding the shower incident containing statements by an inmate Phillips to the effect that Pickett's version of events was true and, therefore, that would have impeached Officer Hall's testimony regarding the shower incident. The district court

excluded this evidence as inadmissible hearsay.

The crux of Pickett's argument is not that the evidence was not hearsay, but that defendants had stipulated to its admission. The district court rejected this argument, reasoning that defendants had agreed to the admission of the entirety of exhibit 36, not just the part favorable to Pickett. Given that Pickett had withdrawn his agreement to introduce the whole exhibit, the district court reasoned that defendants could not be held to have waived the right to object to introduction of Phillips's statements. We agree. We also note that, regardless of the parties' stipulations, trial courts are free to exclude, *sua sponte*, inadmissible evidence. *Noel Shows, Inc. v. United States,* 721 F.2d 327, 330 (11th Cir.1983) (citing *C.B. Wright v. Hartford Accident & Indemnity Co.,* 580 F.2d 809, 810 (5th Cir.1978)); *see also* Charles Alan Wright & Kenneth W. Graham, Jr., 22 Federal Practice and Procedure § 5224 (1978 & Supp. 2002) (reasoning that trial courts may exclude evidence under Federal Rule of Evidence 403 without request).

Pickett also attempts, on appeal, to argue that this evidence is admissible as non-hearsay or under an exception to the hearsay rule. In his original Rule 59 motion Pickett failed to put forth this assertion before the district court, however, and he is thus foreclosed from making this argument on appeal. *See Boyers v. Texaco Refining and Marketing, Inc.,* 848 F.2d 809, 811 (7th Cir.1988).

### III.

For the reasons set forth above, we affirm.