[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14554

_____

D.C. Docket No. 1:18-cr-20664-RAR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FABIAN PERPALL,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 18, 2021)

Before MARTIN, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

Fabian Perpall appeals his felon-in-possession convictions, arguing that he should receive a new trial because the district court improperly admitted evidence of his prior convictions for possessing firearms. We cannot say that the district court

abused its discretion in admitting this evidence under Rule 404(b). Accordingly, we affirm.

## I.

One summer morning, Fabian Perpall robbed Tavoris Odom. Odom reported the robbery to the police. Two days later, Odom was standing on a street corner, waiting to buy a gun from a friend. Eventually, he saw a car pulling up. But his friend was not driving; Perpall was. Perpall's hand was hanging out of the window, holding a gun. As Perpall drove up, he called out, "[a]re you trying to get a gun? Damn, Voris, are you trying to get a gun to kill me, to do something to me … ?" He then began shooting at Odom. When Odom tried to run, Perpall chased him and hit him with the car, firing the entire time. After shooting Odom in the leg, Perpall fired two or three more rounds at him while he lay helpless on the pavement.

Nearby residents placed two 911 calls, and when the police arrived, they applied pressure to a wound in Odom's stomach and took him to the hospital. The investigating detective recovered nine shell casings from the scene. Odom woke up in the intensive care unit days later. When the investigating detective spoke to Odom, he told the detective that Perpall had shot him, and he identified Perpall from a photo lineup.

The next day, another detective and a squad of officers were surveilling Perpall as a potential suspect in the attempted murder of Odom. The detective saw

Perpall drive away from a house and, after verifying that Perpall was the only one in the car, alerted the assisting detectives who were in a marked police car that Perpall was on the move. When Perpall passed them, those detectives turned on their lights and sirens and initiated a traffic stop. At first, Perpall slowed down, but then he sped away as one detective began to exit his vehicle. Perpall led the detectives on a high-speed chase through a residential neighborhood. Upon request by the detectives, nearby officers joined the chase, and helicopters provided assistance.

Eventually, one of Perpall's tires went flat, and he crashed into a fence. He exited the crashed car from the passenger side and attempted to flee on foot. The officers pursued Perpall through the front yard and into an open field where they caught him. The pursuit lasted about thirty seconds. During the foot-chase, one officer stayed behind with the crashed vehicle. He "clear[ed]" the vehicle, verifying that Perpall had been the only person in the car. He then observed a black gun in the center console between the gear shift and the radio. He also learned that Perpall did not own the car; it had been reported stolen three days before.

The federal government charged Perpall with two felon-in-possession counts, and Perpall pleaded not guilty. Prior to trial, the government gave notice under Rule 404(b) of its intent to present evidence of Perpall's prior convictions at trial, and a day before trial, the district court held a hearing to discuss the Rule 404(b) evidence. The government planned to introduce two judgments, which reflected that Perpall

had previously been convicted three times for being a felon in possession and once for discharging a firearm from a vehicle. It withdrew its request to admit a previous conviction for attempted premeditated murder with a firearm, which the judge said he "would never have allowed . . . anyway." According to the government, Perpall had placed the *mens rea* element at issue by pleading guilty, and the prior convictions would show Perpall's intent and state of mind, including the absence of accident or mistake.

Perpall objected. He stated that he had stipulated that he was a convicted felon who knew it was illegal to possess a gun. And he argued that because he was presenting an alibi defense and was not arguing mistake, the prior convictions were not relevant and that even if they were, they were more prejudicial than probative. The district court admitted the evidence, reasoning that it was admissible because this was a constructive possession case, that there were only two judgments, and that those judgments had been "somewhat sanitized" because the state-court judgment omitted all information except the counts of conviction and only the first page of the federal judgment would be entered. The district court also promised that it would give a curative instruction before the prior convictions were introduced and again in jury instructions.

In fact, the district court gave three limiting instructions. It gave two instructions during trial, one directly before the exhibits were admitted and one at

the end of the witness's testimony in which they were discussed. After the second cautionary instruction, the judge asked the jury if it understood, and the jury audibly answered "yes." The judge also refused to allow the government to reference Perpall's attempted murder conviction or two other prior convictions when he testified. And before closing arguments, the judge read the jury a limiting instruction, admonishing the jurors not to consider those convictions for propensity but only to determine whether Perpall had the necessary state of mind or intent and whether Perpall had possessed a gun by accident or mistake. The jury convicted Perpall of both counts, and Perpall moved for a new trial. The district court denied the motion. Perpall timely appealed, arguing that the district court should not have admitted the evidence of his prior convictions.

## II.

The felon-in-possession statute prohibits a convicted felon from possessing a firearm. 18 U.S.C. § 922(g)(1). The government must prove *mens rea* as to both the status element—that the defendant is a convicted felon—and the possession element. *Rehaif v. United States*, 139 S.Ct. 2191, 2195–96 (2019). The *mens reas* necessary for both elements is "knowingly." *Id.* The status element can be proven by stipulation. In fact, if a defendant stipulates to knowing that he is a convicted felon, the government cannot offer evidence of his prior convictions to prove that element. *Old Chief v. United States*, 519 U.S. 172, 188–90 (1997). But Perpall's stipulation

5

that he knew he was a convicted felon does no work here. That stipulation did not speak to whether he knowingly possessed a firearm. Because the evidence of his prior convictions was offered to prove an element other than status, the standard Rule 404(b) analysis controls. *Old Chief*, 519 U.S. at 190.

This Court reviews a district court's admission of evidence under Rule 404(b) for abuse of discretion. *United States v. Nerey*, 877 F.3d 956, 974 (11th Cir. 2017). Rule 404(b) prohibits evidence of prior bad acts if the evidence is offered to show only propensity. Fed. R. Evid. § 404(b)(1). But it allows that evidence for other reasons, such as to prove "intent," "absence of mistake, or lack of accident." *Id.* at § 404(b)(2). Rule 404(b) is a rule "of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity. The list [of admissible evidence] provided by the rule is not exhaustive and the range of relevancy … is almost infinite." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (citation omitted). Still, to be admissible under Rule 404(b), the evidence must be relevant to more than propensity, must be reliable, and cannot be more prejudicial than probative. *United States v. Green*, 873 F.3d 846, 858 (11th Cir. 2017). Here, both parties agree that the evidence is reliable. But Perpall argues that the prior convictions fail to meet the first and third criteria.

Turning to the first criterion, our precedents make clear that the prior convictions here were not admitted as improper propensity evidence. Because the

6

firearm was found in the console of the car that Perpall had been driving, this case involves constructive possession, not actual possession. By pleading not guilty, Perpall put his knowledge of the presence of the gun at issue, *United States v. Jernigan*, 341 F.3d 1273, 1281 & n.7 (11th Cir. 2003), making Perpall's prior convictions relevant to show intent, state of mind, and absence of mistake or accident.[1] We have explained that "the caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental)." *Jernigan*, 341 F.3d at 1281 (collecting cases). Or "[p]ut simply, the fact that [the defendant] knowingly possessed a firearm in a car on a previous occasion makes it more likely that he *knowingly* did so this time as well, and not because of accident or mistake." *Id.* at 1281–82. We have reiterated that holding multiple times. *See, e.g.*, *United States v. Troya*, 733 F.3d 1125, 1131–32 (11th Cir. 2013); *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005). "Against this doctrinal background, it is untenable to say that [Perpall's] previous, knowing commission of crimes that involved the possession of a weapon—and specifically, the possession

---

[1] Because this is a constructive possession case, we need not, and do not, reach the question of whether similar evidence would be relevant to knowledge or intent in an "actual possession" case. *Cf. United States v. Williams*, 620 F.3d 483, 489 (5th Cir. 2010) ("In the context of a weapon-possession case, Rule 404(b) evidence of intent is relevant to a theory of constructive possession, but not to a theory of actual possession.").

of a weapon in a car—does not logically bear on his knowledge of the presence of a gun" in the car he was driving here. *Jernigan*, 341 F.3d at 1281.

Perpall argues that his prior convictions were not relevant because he intended to present an alibi defense and not to argue mistake or accident. But it does not matter what defense Perpall said he intended to raise at trial or whether he intended to present any defense at all. The government had to present its case first, and it had the burden of proving that he knowingly possessed the gun that the detectives found in the car. *See United States v. Vereen*, 920 F.3d 1300, 1307–08 (11th Cir. 2019) (explaining that felon in possession is a "general intent" crime, not strict liability, which requires proof that the defendant "knowingly possessed" the firearm); *see also Rehaif*, 139 S.Ct. at 2195–96. Specifically, the government had to prove that Perpall "was aware or knew of the firearm's presence and had the ability and intent to later exercise dominion and control over the firearm." *United States v. Ochoa*, 941 F.3d 1074, 1104 (11th Cir. 2019). Under our precedents, Perpall's prior convictions were relevant to those issues.

Turning to the next challenged 404(b) criterion, we cannot say the district court abused its discretion in concluding that the probative value of the prior convictions was not outweighed by their prejudicial effect under Rule 403. *See id.* at 1280. Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility," *Nerey*, 877

8

F.3d at 975 (citation omitted), "maximizing [the evidence's] probative value and minimizing its undue prejudicial impact," *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). "To determine whether the evidence is more probative than prejudicial, a district court must engage in a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009) (cleaned up).

Also relevant to our review is whether the district court gave limiting instructions, *see, e.g.*, *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997), whether "the district court was careful to preclude the admission of certain especially prejudicial aspects of [the defendant's] prior convictions," *Jernigan*, 341 F.3d at 1282, and whether the prior convictions revealed heinous acts, *see, e.g.*, *United States v. Williams*, 816 F.2d 1527, 1532 (11th Cir. 1987). When looking at a district court's Rule 403 balancing, "we are loathe to disturb the sound exercise of its discretion … 'because of the judge's first-hand exposure to the evidence and because of the judge's familiarity with the case and ability to gauge the impact of the evidence on the jury in the context of the trial.'" *Jernigan*, 341 F.3d at 1285 (quoting *United States v. Williams*, 216 F.3d 611, 615 (7th Cir. 2000)). Indeed, we have recognized that "the district court is uniquely situated to make nuanced

judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice." *Id.*

Here, the district court reasonably weighed the relevant considerations. Weighing in favor of admission, the prosecution had a real need to introduce the evidence to establish knowing possession. *See Williams*, 816 F.2d at 1532. The police found the gun in a car that Perpall had been driving, but Perpall was not in the car when he was arrested, and that car did not belong to Perpall. Ballistics matched the gun to the casings found at the scene of the shooting, but the only link between the gun from that shooting and Perpall was the testimony of the alleged victim who was subject to cross examination. Perpall's prior convictions were for very similar crimes; indeed, three were for the exact same crime for which Perpall was on trial. *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) ("A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense."). And the four- and six-year spans between the prior convictions and the conduct underlying the current charge did not render the prior convictions too remote. *See United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007) (collecting cases).

The district court also took steps to prevent any unfair prejudice. The district court gave three separate limiting instructions, refused to admit more prejudicial and less similar prior convictions, and "somewhat sanitized" the records of the prior

10

convictions that were admitted. The district court even questioned the jurors to ensure that they understood its limiting instructions. Based on our precedent and a "common sense assessment of all the circumstances," the district court did not abuse its discretion in admitting the prior convictions.

### III.

Because the district court did not abuse its discretion either in finding that the prior convictions were relevant to intent or accident or in its Rule 403 balancing, we **AFFIRM**.